**Billy Joe OETH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 65A04–0202–CR–83.

Court of Appeals of Indiana.

Sept. 27, 2002.

Beth McFadin Higgins, McFadin Higgins & Folz, Mt. Vernon, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Billy Oeth appeals his convictions for attempted rape, criminal deviate conduct, aggravated battery, and battery. In particular, he contends that the evidence is insufficient to support his convictions for attempted rape, criminal deviate conduct, and aggravated battery. Oeth also argues that his convictions for attempted rape and criminal deviate conduct as well as aggravated battery and battery violate Indiana's Double Jeopardy Clause and that his sentence is manifestly unreasonable. Because we find that Oeth physically attacked and sexually assaulted his elderly aunt with a hatchet, we find that there is sufficient evidence to support his convictions. For these same reasons, we find that Oeth's seventy-year sentence is not manifestly unreasonable. However, because Oeth's act of striking his aunt with a hatchet was used to prove both aggravated battery and battery, we find that these convictions violate the double jeopardy clause and therefore vacate his conviction for battery.

### Facts and Procedural History

On the afternoon of April 13, 2000, sixty-seven-year-old Esther Saltzman was sunbathing on the back patio of her Posey County home. While lying in her chaise lounge, Saltzman's forty-seven-year-old nephew, Billy Oeth, snuck up behind her and started choking her with his hands. Saltzman fought back and pleaded with Oeth to stop. Oeth then forced Saltzman onto the ground and physically restrained her by sitting on her legs. Saltzman saw a hatchet, which did not belong to her, lying beside her on the ground. Saltzman reached for it, but Oeth grabbed it first and told her "we are going to f* * * . . . by the mouth or down below." Tr. p. 18–19. Oeth then pulled down Saltzman's bathing suit top and grabbed her breasts. Oeth also pulled down the bottom of Saltzman's bathing suit and inserted his fingers in her vagina. At some point during the attack, Oeth struck Saltzman on the back of her head and behind her ear with the hatchet. When Oeth finally rolled off Saltzman, she was able to break free and ran inside her house. Saltzman then drove her car to a nearby business and called police. Eventually Saltzman was taken by ambulance to the emergency room where she was treated for various injuries. Saltzman received stitches on both the back of her head and behind her ear. Saltzman also had numerous cuts, bruises, and scrapes to her face, neck, shoulders, arms, elbow, and breasts.

The State charged Oeth with Attempted Rape as a Class A felony;[1] Criminal Deviate Conduct as a Class A felony;[2] Aggravated Battery as a Class B felony;[3] and Battery as a Class C felony.[4] The jury convicted Oeth as charged. The trial court sentenced Oeth to thirty years for attempted rape, forty years for criminal deviate conduct, ten years for aggravated battery, and four years for battery. The court ordered the attempted rape and criminal deviate conduct sentences to be served consecutively and the aggravated battery and battery sentences to be served concurrently to one another and to the

1. Ind.Code §§ 35–42–4–1(a)(1), (b)(2); Ind.Code § 35–41–5–1(a).

2. Ind.Code §§ 35–42–4–2(a)(1), (b)(2).

3. Ind.Code § 35–42–2–1.5.

4. Ind.Code § 35–42–2–1(a)(3).

other counts for an aggregate sentence of seventy years. This appeal ensued.

## Discussion and Decision

Oeth raises three issues on appeal. First, he contends that the evidence is insufficient to support his convictions for attempted rape, criminal deviate conduct, and aggravated battery. Second, he contends that his convictions for attempted rape and criminal deviate conduct as well as aggravated battery and battery violate Indiana's Double Jeopardy Clause. Finally, he contends that his seventy-year sentence is manifestly unreasonable. We address each issue in turn.

### I. Sufficiency of the Evidence

Oeth contends that the evidence is insufficient to support his convictions for attempted rape, criminal deviate conduct, and aggravated battery. In particular, he argues that there is no evidence that he took a substantial step toward having sexual intercourse with Saltzman; that he committed attempted rape and criminal deviate conduct while armed with a deadly weapon; and that Saltzman's injuries created a substantial risk of death.

■ When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge witness credibility. *James v. State*, 755 N.E.2d 226, 229 (Ind. Ct.App.2001), *trans. denied.* Instead, we examine only the evidence favorable to the judgment, together with the reasonable inferences to be drawn therefrom. *Id.*

### A. Attempted Rape

To convict a defendant of attempted rape as a Class A felony as charged in this case, the State must prove that the defendant, while armed with a deadly weapon, knowingly or intentionally took a substantial step toward having sexual intercourse with a member of the opposite sex when the other person is compelled by force or imminent threat of force. Ind.Code §§ 35-42-4-1(a)(1), (b)(2); Ind.Code § 35-41-5-1(a). Sexual intercourse is defined as "an act that includes any penetration of the female sex organ by the male sex organ." Ind.Code § 35-41-1-26.

■ Oeth first argues that the evidence is insufficient to prove that he took a substantial step toward having sexual intercourse with Saltzman. Specifically, he claims that there is no evidence that he attempted to insert his penis in Saltzman's vagina. What constitutes a "substantial step" toward the commission of a crime is dependent upon the facts of the case, but the requirement is a minimal one and is often defined as any overt act in furtherance of the crime. *Prewitt v. State*, 761 N.E.2d 862, 874 (Ind.Ct.App.2002). A substantial step toward rape begins with a physical assault on the victim, and there does not have to be any sexual touching or positioning or an attempt to remove the victim's or the defendant's clothing. *Hughes v. State*, 600 N.E.2d 130, 132 (Ind. Ct.App.1992). The determination of what constitutes a substantial step is within the province of the jury. *Prewitt*, 761 N.E.2d at 874.

■ Here, the evidence shows that Oeth choked Saltzman, forced her onto the ground, and got on top of her. He then told Saltzman "we are going to f* * *," pulled down both the top and bottom of her bathing suit, and grabbed her breasts. Tr. p. 18. Based upon these facts, the jury could have determined that Oeth engaged in a substantial step toward having sexual intercourse with Saltzman. *See Williams v. State*, 685 N.E.2d 730, 735 (Ind.Ct.App. 1997) (finding sufficient evidence existed from which the factfinder could have reasonably inferred that the defendant took a substantial step toward raping the victim where the defendant pushed the victim

down, unbuckled her belt, and tried to pull down her pants).

■ Oeth next argues that the evidence is insufficient to prove that he attempted to rape Saltzman while armed with a deadly weapon. Specifically, Oeth claims that Saltzman was not aware that he possessed the hatchet until after the commission of attempted rape. When rape is elevated to a Class A felony due to the use of a deadly weapon, it is not necessary for the State to show that the weapon was held on the victim at all times. *Potter v. State*, 684 N.E.2d 1127, 1137 (Ind.1997). When reviewing a sufficiency claim concerning whether a defendant was armed with a deadly weapon, this Court looks to such factors as whether there was an initial show of deadly force with the weapon, whether the intent was to intimidate the victim with the weapon, and whether the weapon was at least constructively under the defendant's control at all times. *Id.*

■ Here, the evidence shows that Oeth choked Saltzman, forced her onto the ground, and got on top of her. At this point, Saltzman saw the hatchet lying beside her on the ground. The hatchet did not belong to Saltzman, and it was not there before Oeth snuck up behind her. Saltzman reached for the hatchet, but Oeth grabbed it first. Oeth then pulled down Saltzman's bathing suit top and grabbed her breasts. Later during the attack, Oeth struck Saltzman with the hatchet on the back of her head and behind her ear. Given these facts, we find that there exists sufficient evidence from which the jury could have found that Oeth committed attempted rape while armed with a deadly weapon. *See id.* (finding sufficient evidence to convict the defendant of rape while armed with a deadly weapon where the defendant threatened the victim with a knife even though the knife was located in an adjoining room during the actual rape).

### B. Criminal Deviate Conduct

■ To convict a defendant of criminal deviate conduct as a Class A felony as charged in this case, the State must prove that the defendant, while armed with a deadly weapon, knowingly or intentionally caused another person to perform or submit to deviate sexual conduct when the other person is compelled by force or imminent threat of force. Ind.Code §§ 35–42–4–2(a)(1), (b)(2). Deviate sexual conduct is defined as "an act involving: (1) a sex organ of one person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Ind.Code § 35–41–1–9. As above, Oeth argues that the evidence is insufficient to prove that he committed criminal deviate conduct while armed with a deadly weapon because Saltzman was not aware that he possessed the hatchet until after the commission of criminal deviate conduct. Here, the evidence shows that Saltzman reached for the hatchet, but Oeth grabbed it first. Oeth then pulled down the bottom of Saltzman's bathing suit and inserted his fingers in her vagina. As such, we find that there exists sufficient evidence from which the jury could have found that Oeth committed criminal deviate conduct while armed with a deadly weapon.

### C. Aggravated Battery

To convict a defendant of aggravated battery as a Class B felony as charged in this case, the State must prove that the defendant knowingly or intentionally inflicted injury on a person that created a substantial risk of death. Ind.Code § 35–42–2–1.5. Oeth argues that the evidence is insufficient because Saltzman's injuries did not create a substantial risk of death.

Specifically, Oeth claims that the State must present expert medical testimony to prove a substantial risk of death.

■■■ Shortly after Oeth submitted his Appellant's Brief, another panel of this Court addressed the issue of whether the State must present expert medical testimony to prove the substantial risk of death element of aggravated battery. *Wilcher v. State*, 771 N.E.2d 113 (Ind.Ct.App.2002), *trans. pending.* Relying on supreme court authority, the court concluded that expert medical testimony is not required and accordingly affirmed the defendant's conviction for aggravated battery for stabbing the victim in the chest with a knife. *Id.* at 117. In light of this holding, the fact that the State did not present any expert medical testimony on this element is not dispositive.

■■■ Rather, in reviewing a sufficiency claim concerning whether the injuries created a substantial risk of death, we look to the observable facts, including the nature and location of the injury, and the treatment provided. *See Tingle v. State*, 632 N.E.2d 345, 354 (Ind.1994); *Wilcher*, 771 N.E.2d at 117. Here, Saltzman was struck on the back of her head and behind her ear with a hatchet. Saltzman testified that she lost consciousness for a period of time and that there was profuse bleeding from her wounds which the emergency room doctor had trouble stopping. The wound on the back of her head required nine stitches, and the wounds behind her ear also required several stitches. The jury was shown pictures of these wounds as well as pictures of the crime scene showing pools of blood on the ground and a picture of the hatchet with blood on it. In light of this evidence, the jury could have reasonably inferred that Saltzman's injuries created a substantial risk of death. *See Beanblossom v. State*, 530 N.E.2d 741, 742–43 (Ind.1988) (finding that the victim's injury created a substantial risk of death when he received a blow to the back of the head which was strong enough to knock him down to his hands and knees and cause him to remain in a semiconscious state for a short period of time).

## II. Double Jeopardy

Oeth next contends that his convictions for attempted rape and criminal deviate conduct as well as aggravated battery and battery violate Indiana's Double Jeopardy Clause. In particular, Oeth argues that his convictions for attempted rape and criminal deviate conduct are based upon the same act of Oeth inserting his fingers in Saltzman's vagina; that these same convictions were enhanced to Class A felonies due to the use of a deadly weapon; and that his convictions for aggravated battery and battery are based upon the same act of Oeth striking Saltzman with a hatchet.

■■■ Our supreme court recently revisited Indiana's Double Jeopardy Clause in *Guyton v. State*, 771 N.E.2d 1141 (Ind. 2002). There, the majority analyzed the defendant's Indiana double jeopardy claim solely under the five traditional categories of double jeopardy noted by Justice Sullivan in his concurrence in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999). *Guyton*, 771 N.E.2d at 1143. Those categories are: (1) "[c]onviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished"; (2) "[c]onviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished"; (3) "[c]onviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished"; (4) "[c]onviction and punishment for an enhancement of a crime where the enhancement is

imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished"; and (5) "[c]onviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished." *Richardson*, 717 N.E.2d at 55–56 (Sullivan, J., concurring); *see also Guyton*, 771 N.E.2d at 1143. We therefore analyze each of Oeth's double jeopardy claims under these five categories.

## A. Attempted Rape and Criminal Deviate Conduct

To convict Oeth of attempted rape as charged in this case, the State was required to prove that Oeth, while armed with a deadly weapon, knowingly or intentionally took a substantial step toward having sexual intercourse with Saltzman when she was compelled by force or imminent threat of force. I.C. §§ 35–42–4–1(a)(1), (b)(2); I.C. § 35–41–5–1(a). To convict Oeth of criminal deviate conduct as charged in this case, the State was required to prove that Oeth, while armed with a deadly weapon, knowingly or intentionally caused Saltzman to perform or submit to deviate sexual conduct when she was compelled by force or imminent threat of force. I.C. §§ 35–42–4–2(a)(1), (b)(2).

Oeth first argues that his convictions for attempted rape and criminal deviate conduct violate Indiana's Double Jeopardy Clause because both convictions are based upon the same act of Oeth inserting his fingers in Saltzman's vagina. As support that Oeth committed attempted rape, the prosecutor argued during closing argument that Oeth attacked Saltzman from behind, tried to choke her, knocked her to the ground, told her "we are going to f* * *," pulled down her bathing suit top and bottom, grabbed her breasts, and inserted his fingers in her vagina. Tr. p. 18. As support that Oeth committed criminal deviate conduct, the State alleged in its charging information, and the prosecutor argued during closing argument, that Oeth inserted his fingers in Saltzman's vagina. This falls under category three of Justice Sullivan's formulation, which prohibits conviction and punishment for a crime that consists of the very same act as an element of another crime for which the defendant has been convicted and punished. *Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring) (giving the example of a confinement conviction vacated because it was coextensive with the behavior necessary to establish an element of a robbery conviction).

 Justice Sullivan observed that a category three violation does not arise "in situations where the subject behavior or harm is either separate from or more extensive than that necessary to constitute the element of the first crime." *Id.* at 55 (Sullivan, J., concurring). He then cited as examples cases where attempted rape or rape and confinement convictions were affirmed where the confinement extended beyond that necessary to accomplish the rape or attempted rape. *Id.* at 55–56 (Sullivan, J., concurring). Here, although the prosecutor asked the jury during closing argument to consider Oeth's act of inserting his fingers in Saltzman's vagina as support for both attempted rape and criminal deviate conduct, the attempted rape was also based on a long list of other acts also argued to the jury. The particular act of Oeth inserting his fingers in Saltzman's vagina went beyond what was necessary to convict Oeth of attempted rape and is properly viewed as a separate criminal act. Thus, there is no double jeopardy violation.

Oeth next argues that his convictions for attempted rape and criminal deviate conduct violate Indiana's Double Jeopardy Clause because both convictions were enhanced to Class A felonies due to the use of a deadly weapon. This falls under category four of Justice Sullivan's formulation, which prohibits conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished. *Id.* at 56 (Sullivan, J. concurring). In *Gates v. State,* 759 N.E.2d 631 (Ind.2001), our supreme court addressed the deadly weapon enhancement and concluded: "It is well established in Indiana that the use of a single deadly weapon during the commission of separate offenses may enhance the level of each offense." *Id.* at 633 n. 2 (citing *Carrington v. State,* 678 N.E.2d 1143 (Ind.Ct.App. 1997), *trans. denied; White v. State,* 544 N.E.2d 569 (Ind.Ct.App.1989), *trans. denied* ). The reasoning behind this rule is that the deadly weapon enhancement is due to the threat of harm, not actual harm, and the threat of harm exists for each of the crimes a defendant commits while armed with a deadly weapon. *See White,* 544 N.E.2d at 570. The very same threat of harm that existed during Oeth's commission of attempted rape with the hatchet is not the very same threat of harm that existed during Oeth's commission of criminal deviate conduct with the hatchet. Accordingly, there is no double jeopardy violation.

### B. Aggravated Battery and Battery

To convict Oeth of aggravated battery as charged in this case, the State was required to prove that Oeth knowingly or intentionally inflicted injury on Saltzman that created a substantial risk of death. I.C. § 35–42–2–1.5. To convict Oeth of battery as charged in this case, the State was required to prove that Oeth knowingly or intentionally touched Saltzman in a rude, insolent, or angry manner while armed with a deadly weapon. I.C. § 35–42–2–1(a)(3). Oeth argues, and the State concedes, that his convictions for aggravated battery and battery violate Indiana's Double Jeopardy Clause. Specifically, he claims that both convictions are based upon the same act of Oeth striking Saltzman with the hatchet. We agree.

In support of both of these crimes, the State argued that Oeth struck Saltzman with the hatchet. This falls under category two of Justice Sullivan's formulation, which prohibits conviction and punishment for a crime that consists of the very same act as another crime for which the defendant has been convicted and punished. *Richardson,* 717 N.E.2d at 55 (Sullivan, J., concurring) (giving the example of a battery conviction vacated because the information showed that the identical touching was the basis of a second battery conviction). The infliction of injury causing a substantial risk of death was the very same act that constituted the rude, angry, or insolent touching with the hatchet. We therefore vacate Oeth's battery conviction.

### III. Manifestly Unreasonable

Lastly, Oeth contends that his seventy-year sentence is manifestly unreasonable in light of his personality disorder and minimal criminal history. Under Article VII, Section 6 of the Indiana Constitution, we have the constitutional authority to review and revise sentences. However, we will not do so unless the sentence imposed is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate

Rule 7(B).[5] Our review under Appellate Rule 7(B) is very deferential to the trial court. *Cruz Angeles v. State,* 751 N.E.2d 790, 800 (Ind.Ct.App.2001), *trans. denied.*

As for the nature of the offense, the presumptive sentence for the class of crimes to which the offense belongs is meant to be the starting point for the court's consideration of what sentence is appropriate for the crime committed. *Hildebrandt v. State,* 770 N.E.2d 355, 361 (Ind.Ct.App.2002), *trans. denied.* Here, Oeth was convicted of two Class A felonies and one Class B felony. The presumptive sentence for a Class A felony is thirty years, with the maximum sentence being fifty years and the minimum sentence being twenty years. Ind.Code § 35–50–2–4. And the presumptive sentence for a Class B felony is ten years, with the maximum sentence being twenty years and the minimum sentence being six years. Ind.Code § 35–50–2–5. As such, the maximum lawful sentence Oeth faced was 120 years if maximum, consecutive sentences were imposed, and the minimum lawful sentence Oeth faced was twenty years if minimum, concurrent sentences were imposed. Viewed in this context, Oeth's seventy-year sentence falls halfway between the minimum and maximum lawful sentences. As we recently observed, "sentences which approach or equal the maximum lawful sentence for the class of crime at issue . . . have historically invited appellate review and, upon occasion, revision." *Hildebrandt,* 770 N.E.2d at 360. Oeth's sentence does not approach the maximum lawful sentence.

As for the character of the offender, the court is guided by the general sentencing considerations under Indiana Code § 35–38–1–7.1(a), the aggravating and mitigating circumstances under Indiana Code § 35–38–1–7.1(b) and (c), and the other factors left to the trial court's discretion under Indiana Code § 35–38–1–7.1(d). *Id.* at 361. Here, the nature and circumstances of the crime are that Oeth, armed with a hatchet, violently attacked and sexually assaulted a sixty-seven-year-old woman who was not only his aunt but also his financial guardian. As for Oeth's character and condition, two psychiatrists testified at trial that he suffered from two personality disorders, neither of which rose to the level of a mental disease or defect. Specifically, Oeth suffered from anti-social personality disorder, which is characterized as doing anti-social and illegal acts; and narcissistic personality disorder, which manifests itself as selfishness, self-centeredness, and not caring about the feelings of other people. In fact, one psychiatrist testified that Oeth did these acts to his aunt precisely because he knew they were wrong. As for Oeth's criminal history, it consists of a prior misdemeanor conviction for criminal recklessness in 1997. Under these facts and circumstances, we cannot conclude that Oeth's seventy-year sentence is manifestly unreasonable.

### Conclusion

We find that there is sufficient evidence to support Oeth's convictions for attempted rape, criminal deviate conduct, and aggravated battery. In addition, we find that Oeth's sentence is not manifestly unreasonable. However, because Oeth's convictions for aggravated battery and battery violate the double jeopardy clause, we vacate Oeth's conviction for battery and remand to the trial court for disposition consistent with this opinion.

---

**5.** Effective January 1, 2003, Appellate Rule 7(B) will provide: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

Affirmed in part, reversed in part, and remanded with instructions.

BAKER, J., and BARNES, J., concur.