Frank E. GRAY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0302–CR–135.

Court of Appeals of Indiana.

Oct. 17, 2003.

Kurt A. Young, Nashville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

After a bench trial, Frank E. Gray was convicted of theft[1] as a Class D felony and burglary[2] as a Class C felony and was adjudged to be a habitual offender. He now appeals, arguing that the evidence supporting his convictions was insufficient because a fence enclosing a car lot is not a structure within the meaning of IC 35–43–2–1, and there was no evidence of a breaking or of his intent.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 25, 2002, Officer Brian Zotz of the Indianapolis Police Department was dispatched to an auto repair business on a report of a burglary in progress. At the time, he was next door at a gas station, and he responded within thirty seconds of receiving the dispatch. Officer Zotz and another officer investigated and found two men standing near the six-foot fence that enclosed the customers' cars that were left at the shop for repair. A third man, later identified as Gray, was inside the fenced area, squatting on the ground and leaning into the open passenger door of a red Camaro. After securing the men, Officer Zotz discovered a large screwdriver on the seat of the Camaro. The car was missing its door handle and stereo, and the speaker cover from the passenger door speaker had been pried off and was lying loose. Albert Sutton, the owner of the business, was called to the scene. He stated that he did not recognize the screwdriver and that the car was intact before that evening. The fence and gate were also intact, and officers had to climb over it to gain entry to the area.

Gray was arrested and charged with burglary and theft. He was convicted of both and adjudged to be a habitual offender. He now appeals.

## DISCUSSION AND DECISION

Gray argues that the evidence supporting his convictions was insufficient. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge witness credibility. *Oeth v. State*, 775 N.E.2d 696, 700 (Ind.Ct.App. 2002), *trans. denied* (2003); *Bailey v. State*, 764 N.E.2d 728, 730 (Ind.Ct.App. 2002), *trans. denied*. Instead, we examine only the evidence favorable to the judgment, together with the reasonable inferences to be drawn therefrom. *Oeth*, 775 N.E.2d at 700; *Bailey*, 764 N.E.2d at 730.

---

1. *See* IC 35–43–4–2. We note that the abstract of judgment indicates that Gray was found guilty of theft; the trial court orally pronounced him guilty of attempted theft.

2. *See* IC 35–43–2–1.

We will affirm the conviction if evidence of probative value exists from which a fact-finder could find the defendant guilty beyond a reasonable doubt. *Bailey,* 764 N.E.2d at 730. A burglary conviction may rest upon circumstantial evidence, and such evidence need not exclude every reasonable hypothesis of innocence as long as an inference may reasonably be drawn therefrom which supports the findings of the trier of fact. *Voss v. State,* 469 N.E.2d 788, 790 (Ind.Ct.App.1984).

To obtain a conviction for burglary as a Class C felony, the State was required to present evidence that Gray broke and entered the building or structure of another person, with the intent to commit a felony in it. IC 35–43–2–1. Gray advances two related arguments—that there was no evidence of a breaking and that the fence is not a structure within the meaning of the statute. We have previously addressed these questions in *Joy v. State,* 460 N.E.2d 551, 557–59 (Ind.Ct.App.1984). In that case, the defendant's co-conspirators entered a lumberyard by either hopping over or cutting their way through the fence enclosing it. Once inside, they removed building materials from the open storage sheds, loaded them on the trucks, and drove them through the fence into the adjoining cornfield. The defendant argued that these acts did not constitute a burglary because there could be no breaking of a fence or an open storage shed and because neither the fence nor the sheds could be viewed as a building or structure. After reviewing cases from other jurisdictions, we determined that the fence surrounding the lumberyard was a "structure" within the meaning of the burglary statute. In so holding, we explained that the fence was clearly intended to protect the property within its confines and that it was an integral part of a closed compound. We further concluded that when the defendant's co-conspirators gained entry, either by hopping over or cutting through the fence, they committed a breaking. *Id.* at 558–59.

Our supreme court relied on *Joy* in deciding the factually similar *McCovens v. State,* 539 N.E.2d 26, 29 (Ind.1989). In that case, the defendant again argued that the evidence was insufficient to sustain his conviction for burglary when the evidence showed that the defendant had climbed or squeezed through a fence surrounding a business. He claimed that because there was no evidence of pry marks or forced entry, the element of breaking was supported only by speculation that he climbed the fence or squeezed through it. Our supreme court held that the fence surrounding the business was a "structure" under the burglary statute because its purpose was to protect the property on the premises. It then concluded that the defendant committed a breaking when he either climbed over the fence or squeezed through its sections. It therefore held that the evidence was sufficient to establish that the defendant committed a breaking. *Id.*

Nonetheless, Gray argues that neither *Joy* nor *McCovens* is controlling here because unlike in those cases, the fence in this case does not adjoin the building nor completely surround the business premises. However, we do not find this distinction to be critical. Sutton, the business owner, testified that he had the fence erected because of theft problems from the cars of his customers. He further testified that he placed his customers' cars within the six-foot, locked fence to protect them. As in *Joy* and *McCovens,* the fence was erected to protect the property placed within it, and the fenced lot served as an integral part of Sutton's business. Moreover, the fence, while not directly connected to the building, did not stand in an isolated area, but rather, on the same city lot as the building.

In a separate argument, Gray also argues that the statutory term "structure" should be narrowly construed not to include a fence. However, our supreme court in *McCovens* has already concluded that fences are not excluded as a matter of law from the statutory meaning of "structure." Accordingly, we conclude that the fence on Sutton's business property constitutes a structure within the meaning of IC 35–43–2–1 and that Gray committed a breaking when he climbed over it.

Finally, Gray contends that there is no evidence that he entered the fenced area with the intent to commit theft. The trier of fact may consider circumstantial evidence and draw reasonable inferences therefrom in determining whether the defendant had the intent to commit a felony after he broke into the property. *Id.* at 29. The intent to commit a felony can be inferred from the time, force, and manner of entry if there is no evidence that the entry was made with some lawful intent. *Perdue v. State*, 398 N.E.2d 1290, 1293 (Ind.Ct.App.1979).

Here, Officer Zotz found Gray inside the fenced lot late at night, leaning into a car that had its door handle and stereo removed. In addition, a large screwdriver was lying on the seat of the car. Gray was not the owner of the car, nor was he an employee of Sutton's business. From these facts, the trial court could have reasonably inferred that Gray entered the fenced area with the intent to commit theft. The evidence is sufficient to support Gray's conviction.

Affirmed.

BAILEY and VAIDIK, JJ., concur.