## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 29 2017, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William Byer, Jr.
Byer & Byer
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Danny R. Aiman,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

March 29, 2017

Court of Appeals Case No.
48A02-1608-CR-1904

Appeal from the
Madison Circuit Court

The Honorable
Angela G. Warner Sims, Judge

Trial Court Cause No.
48C01-1603-F4-415

**Kirsch, Judge.**

[1] Following a bench trial, Danny R. Aiman ("Aiman") was convicted of Level 4 felony burglary[1] and Level 6 felony theft,[2] and Aiman admitted to being a habitual offender.[3] He argues on appeal that the State failed to present sufficient evidence to convict him of theft and burglary.

[2] We affirm.

## Facts and Procedural History

[3] For a week or so in February 2016, Karen Aynes ("Karen") was making daily checks on the home of her son, Christopher Aynes ("Christopher"), while he was in the hospital. Around 5:30 p.m., on February 23, 2016, Karen went to Christopher's home and discovered that a kitchen window was broken and that electronic items were missing, including two televisions. When she was at the home on the previous day, around the same time, the window was intact and no items were missing. Karen contacted the Anderson Police Department, and Officer James Akins ("Officer Akins") responded to the dispatch concerning the reported burglary. Upon arrival, Officer Akins observed that a kitchen window was broken and appeared to be the means of entry into the home.

[4] The evidence most favorable to the verdict is that, on or about February 23, 2016, Aiman borrowed a silver Chevy Venture minivan from Heather Peek

---

[1] *See* Ind. Code § 35-43-2-1(1).

[2] *See* Ind. Code § 35-43-4-2(a)(1)(A).

[3] *See* Ind. Code § 35-50-2-8(a).

("Peek"). After getting the vehicle from Peek, Aiman picked up Heather Bilbrey ("Bilbrey") in the van and told her he needed her help removing items from a friend's home. When they arrived at the residence that was later identified as Christopher's, Aiman entered the home through a window and opened the front door. Aiman, with Bilbrey's help, carried out of the home and loaded into the van a 53-inch television, a 19-inch television, a receiver, a digital speaker, a Bose speaker, and a CD player. They then went to Bilbrey's home and unloaded the items into her garage. Aiman, with Bilbrey as a passenger, picked up Peek at around 9:00-9:30 p.m. and returned Peek's van to her. Based on a tip from some friends, Christopher later located his stolen property in Bilbrey's garage after Bilbrey's mother let him into the house. After further investigation by police, Detective Trent Chamberlin spoke with Aiman on February 29, 2016.

[5] The next day, the State charged Aiman with Level 4 felony burglary and Level 6 felony theft. In June, the State filed an amended charging information adding a habitual offender count. At the June 2016 bench trial, Officer Akins testified that, upon his arrival to the burglarized home, he spoke to the complainant, Karen, and he observed a broken window and determined it was the mode of entry used to gain access to the home. Officer Akins testified that Karen told him that she suspected someone named Maggie McKay ("McKay") committed or was involved in the burglary.

[6] Karen testified next. She stated that McKay was Christopher's girlfriend or ex-girlfriend and that McKay visited or stayed overnight at the house while

Christopher was in the hospital, but Karen "threw her out" sometime during the morning hours of February 23 because McKay had "too much company" at the house and also stole a particular ashtray. *Tr.* at 26, 28. After McKay left, Karen locked up the windows and doors. When she returned the next day to check on the house, she found that it had been burglarized and items were missing, including a digital speaker, a Bose speaker, a 53-inch television, and a 19-inch television. Karen testified that, after she had locked up the house the day before, she did not fear McKay would come back, but had concern about McKay's friends, who, according to Karen, McKay even considered to be "thieves." *Id.* at 39. Karen testified that she told police that she suspected McKay either committed the burglary or had something to do with it.

[7] The State also called Bilbrey to testify. Bilbrey stated that Aiman asked her to accompany him "to remove items from a friend's house." *Id.* at 48, 53. She agreed, and Aiman drove them in a van, which Aiman told Bilbrey that he had borrowed from Peek, to Christopher's house. She testified that Aiman told her that he "had forgotten" the keys to the home, and she watched him crawl through a window. *Id.* at 54. Aiman opened the front door from the inside, and then Bilbrey assisted Aiman in moving items to the van. Bilbrey stated that Aiman asked her if he could put the items in her garage, and she agreed; Aiman pulled the vehicle into her garage, and they unloaded the items in her garage. Bilbrey said that the two of them picked up Peek at her job, and then Peek dropped off Bilbrey and Aiman at Bilbrey's home. Bilbrey acknowledged that she used methamphetamine and was addicted to heroin, but stated that she had

been in jail for ten days prior to trial and was "clean." *Id.* at 61. On cross-examination, Bilbrey testified that she was offered use immunity in exchange for her testimony and that what she said at trial could not be used against her in her pending criminal case.

[8] The State also called Peek as a witness. She testified that, on February 23 or 24, 2016, Aiman asked to borrow her minivan to move items, she agreed, and Aiman came to her place of employment around 5:00 or 6:00 p.m. and picked up her van. Peek stated that at about 9:00 or 9:30 p.m., Aiman returned the van to her at work, and she drove Aiman and Bilbrey to a home that Peek later learned was Bilbrey's house. Peek testified that she did not consider Bilbrey to be trustworthy.

[9] After the trial court denied Aiman's motion for a directed verdict, the defense called Kelli Lane ("Lane") as a witness. Lane's testimony was that Bilbrey had told her that two persons named David Arnold and Daniel Dayton helped Bilbrey with the burglary. Earlier in trial, Bilbrey was asked during her testimony whether she had told Lane that she (Bilbrey) and another individual had used Daniel Dayton's vehicle and committed the burglary in question, Bilbrey denied having made that statement to Lane. *Id*. at 74.

[10] The trial court found Aiman guilty as charged, noting that it found Bilbrey credible because she provided detailed testimony, including how Aiman gained access to the home, what was taken, and where they went with it, and it was corroborated by other evidence presented at trial. The trial court also stated

that it did not find the testimony of Lane to be believable, noting that parts of it did not "make sense." *Id.* at 173. The trial court sentenced Aiman to nine years at the Indiana Department of Correction ("DOC") for the burglary conviction and two years at DOC for the theft conviction, with the two sentenced to run concurrently. For the habitual offender adjudication, the trial court enhanced the burglary conviction by nine years, resulting in a total sentence of eighteen years, of which three years were suspended to probation. Aiman now appeals.

## Discussion and Decision

[11] Aiman argues that the evidence supporting his convictions was insufficient. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge witness credibility. *Gray v. State*, 797 N.E.2d 333, 334 (Ind. Ct. App. 2003); *Oeth v. State,* 775 N.E.2d 696, 700 (Ind. Ct. App. 2002), *trans. denied*. We examine only the evidence favorable to the judgment, together with the reasonable inferences to be drawn therefrom. *Gray*, 979 N.E.2d at 334. We will affirm the conviction if evidence of probative value exists from which a factfinder could find the defendant guilty beyond a reasonable doubt. *Id*. at 335. A burglary conviction may rest upon circumstantial evidence, and such evidence need not exclude every reasonable hypothesis of innocence as long as an inference may reasonably be drawn therefrom which supports the findings of the trier of fact. *Id*. "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence

presented." *Baker v. State,* 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original).

[12] To convict Aiman of Level 4 burglary as charged, the State had to prove beyond a reasonable doubt that, on or about February 23, 2016, Aiman knowingly or intentionally broke and entered Christopher's dwelling with the intent to commit a felony or theft in it. Ind. Code § 35-43-2-1(1). To convict Aiman of Level 6 felony theft as charged, the State was required to prove beyond a reasonable doubt that Aiman knowingly or intentionally exerted unauthorized control over Christopher's property, which was valued at more than $750 but less than $50,000, with the intent to deprive Christopher of any part of the property's use or value. Ind. Code § 35-43-4-2(a)(1)(A).

[13] Aiman challenges the sufficiency of the evidence, asserting that the State failed to present sufficient evidence that it was he, and not Bilbrey or some other persons, who burglarized and stole from Christopher's home. Aiman asserts on appeal that "the circumstantial evidence presented by the State [] was not adequate . . . to convict." *Appellant's Br*. at 12. Contrary to Aiman's argument, his convictions were not based entirely on circumstantial evidence; rather, the State provided direct evidence of Aiman's involvement. Bilbrey testified that Aiman picked her up in a van that he borrowed from Peek, she watched Aiman enter the home through a window, open the front door, and proceed to remove goods, which Aiman asked to store in Bilbrey's garage, and she agreed.

[14] Aiman's argument is that Bilbrey should not have been believed. Indeed, Aiman later argues "there was no *convincing* evidence as to him being . . . the individual entering the burglarized property other than the testimony of [] Bilbrey." *Id*. at 14 (emphasis added). He argues that Bilbrey, who acknowledged drug abuse and was granted use immunity, was the only witness that placed Aiman at Christopher's home, and the missing property was found at her residence. He notes that Bilbrey's description concerning details of the color and interior of the van differed from Peek's testimony about her vehicle, making Bilbrey's testimony about the crime less believable. He also notes that Karen suspected McKay as the burglar, as McKay had been known to take property from Christopher and from Karen in the past.

[15] It is well settled that we cannot judge the credibility of witnesses on appeal. *Gray*, 797 N.E.2d at 334. The jury, acting as the trier of fact, is free to believe whomever it wishes. *Klaff v. State,* 884 N.E.2d 272, 274 (Ind. Ct. App. 2008). Moreover, the factfinder not only determines whom to believe, it also determines what portions of conflicting testimony to believe. *Atwood v. State*, 905 N.E.2d 479, 484 (Ind. Ct. App. 2009), *trans. denied*.

[16] To the extent that Aiman's argument is that, because Bilbrey's testimony is supported by corroborating and circumstantial evidence, his convictions are therefore based on circumstantial evidence, we need not determine whether the circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence. *Brown v. State*, 827 N.E.2d 149, 152 (Ind. Ct. App. 2005). Rather, we determine whether inferences may be reasonably drawn from that evidence

which supports the verdict beyond a reasonable doubt. *Id.* We find that Peek's testimony that she loaned her van to Aiman at the date and time in question, along with her testimony that when Aiman later picked her up from work, Bilbrey was with Aiman in the van, corroborates Bilbrey's account of events. Christopher's testimony that he found his stolen items in Bilbrey's garage also corroborates Bilbrey's testimony. "[T]he question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence." *Maxwell v. State*, 731 N.E.2d 459, 462 (Ind. Ct. App. 2000), *trans. denied*. We find, here, that reasonable minds could reach the inferences that Aiman stole the items from Christopher. Accordingly, the State presented sufficient evidence to convict Aiman of theft and burglary.

Affirmed.

Robb, J., and Barnes, J., concur.