In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1635

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JASON PERRY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 13-cr-57 — **Richard L. Young**, *Judge.*

ARGUED NOVEMBER 9, 2016 — DECIDED JULY 6, 2017

Before BAUER and KANNE, *Circuit Judges*, and FEINERMAN, *District Judge.*[*]

FEINERMAN, *District Judge*. Jason Perry pleaded guilty to two counts under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm and ammunition. The district court sentenced him to 360 months' imprisonment upon finding that three of his prior felonies, including two burglary con-

---

[*] Of the Northern District of Illinois, sitting by designation.

victions under Indiana law, qualified as "violent felonies" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). Perry argues on appeal that the enhancement was improper because Indiana burglary is not an ACCA predicate offense. He also contends that the two felon in possession counts are duplicative and should have been merged at sentencing. We affirm.

## I.  Background

At approximately 8:10 a.m. on May 22, 2013, Perry bought a box of 12-gauge shotgun shells at a Wal-Mart in Princeton, Indiana. About three hours later, police were dispatched to a Mexican restaurant, where Perry was arguing with his ex-girlfriend Jessica Tice about visitation with their 13-year-old son. The officers asked Perry to leave, and he drove away in his pickup truck. He returned less than an hour later, confronted Tice in the restaurant parking lot, and shot her to death with a 12-gauge shotgun in front of their son and Tice's mother. The police arrested Perry shortly thereafter, and found the murder weapon and ammunition in his truck.

Petty was convicted of murder in state court and received an 85-year sentence, with fifteen years suspended to probation. In federal court, Perry was charged with two counts under § 922(g)(1)—one for being a felon in possession of a firearm, and the other for being a felon in possession of ammunition—and he pleaded guilty to both. At sentencing, the district court found that Perry qualified for an enhanced sentence under ACCA because he had three prior convictions for a "violent felony" as defined in § 924(e)(2)(B). Two of those convictions were for burglary in Indiana, and the third was for battery resulting in serious bodily injury.

Perry argued at sentencing that the two felon in possession counts were identical and should merge. The remedy he suggested was for the court to make the sentences on the two counts run concurrently. Without explicitly addressing Perry's merger argument, the district court imposed a 360-month prison sentence on each count, running those sentences concurrently to each another and to the state sentence.

## II. Discussion

ACCA imposes a fifteen-year minimum sentence on defendants convicted under § 922(g)(1) who at the time of the offense had at least three prior convictions for a "violent felony." 18 U.S.C. § 924(e)(1). ACCA defines "violent felony" in relevant part as any felony "that … is burglary." 18 U.S.C. § 924(e)(2)(B)(ii).

The term "burglary" in § 924(e)(2)(B)(ii) does not encompass all burglaries, but only "generic" burglary, which the Supreme Court has defined as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990). Determining whether burglary under a given State's law is encompassed by § 924(e)(2)(B)(ii) presents a categorical question that focuses exclusively on the state crime's statutory definition. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). "[I]f the [state] statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form." *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013).

Indiana law defines burglary as "break[ing] and enter[ing] the building or structure of another person, with in-

tent to commit a felony or theft in it." Ind. Code § 35-43-2-1. This definition is nearly identical to that of "generic" burglary—a congruence that led us in *United States v. Vogt*, 588 F. App'x 497 (7th Cir. 2015), to hold that Indiana burglary qualifies as a predicate "burglary" under ACCA. In fact, we held that it would be "frivolous" to contend otherwise. *Id*. at 498.

Yet *Vogt* is non-precedential, and Perry urges us to chart a different course here, arguing that Indiana burglary is broader than generic burglary with respect to where it may be committed. Indiana burglary may be committed in outdoor, fenced-in areas. See *McCovens v. State*, 539 N.E.2d 26, 29 (Ind. 1989) ("The fence surrounding the business was a 'structure' as contemplated by Ind. Code § 35-43-2-1."); *Gray v. State*, 797 N.E.2d 333, 335–36 (Ind. App. 2003) (holding that a fenced area need not adjoin a building or completely surround a business premises to qualify as a "structure" under the Indiana burglary statute); *Joy v. State*, 460 N.E.2d 551, 558 (Ind. App. 1984) (holding that "the fence surrounding the Leland Lumber Company was a 'structure' as contemplated by our burglary statute"). Perry contends that a state burglary statute that treats a fenced area as a "structure" necessarily "sweeps more broadly" than generic burglary, *Descamps*, 133 S. Ct. at 2283, which according to the Supreme Court may be committed only in "a building or enclosed space," *Shepard v. United States*, 544 U.S. 13, 15–16 (2005).

The strongest support for Perry's position comes from *James v. United States*, 550 U.S. 192 (2007), in which the Supreme Court observed that burglary under Florida law, because it may be committed in curtilage, is broader than generic burglary. *Id*. at 212 ("the inclusion of curtilage takes Florida's underlying offense of burglary outside the defini-

tion of generic burglary") (internal quotation marks omitted). According to Perry, if Florida burglary's coverage of curtilage makes it broader than generic burglary, then so, too, does Indiana burglary's coverage of fenced-in areas.

Perry's argument misses the mark. As a general rule, curtilage need not be completely fenced in. See *United States v. Dunn*, 480 U.S. 294, 301 n.4 (1987) ("declin[ing] … to adopt a bright-line rule that the curtilage should extend no farther than the nearest fence surrounding a fenced house") (internal quotation marks omitted). Florida law is in accord. Although curtilage under the Florida burglary statute requires "*some* form of enclosure," it "does not require *total* enclosure." *Chambers v. State*, 700 So.2d 441, 442 (Fla. App. 1997) (emphases added). Florida burglary thus may be committed where a defendant enters a yard surrounded by a fence with a "ten to fifteen foot gap," *ibid.*, or enters an area fenced on three sides, with a "low-walled 'stoop'" in front and an opening for a driveway, *Jacobs v. State*, 41 So.3d 1004, 1006 (Fla. App. 2010). This explains why the Supreme Court in *James* deemed Florida burglary broader than generic burglary, which, as noted, must take place in "a building or other structure," *Taylor*, 495 U.S. at 598, or "a building or enclosed space," *Shepard*, 544 U.S. at 15–16.

Unlike the Florida burglary statute, Indiana burglary requires that the defendant enter a *wholly* enclosed area. In the Indiana cases cited by Perry, the defendant forced his way into an area completely surrounded by a fence. See *McCovens*, 539 N.E.2d at 29 (where the defendant climbed over or squeezed through a fence "without any holes or openings"); *Gray*, 797 N.E.2d at 335 (where the defendant apparently climbed over a fence enclosing the lot of an auto repair

shop); *Joy*, 460 N.E.2d at 555 (where the defendant used wire cutters to cut a fence surrounding a lumber yard); see also *Calhoon v. State*, 842 N.E.2d 432, 435 (Ind. App. 2006) (observing that *Gray* involved entry into "a completely enclosed area"). Perry brings no Indiana case to our attention, and we are aware of none, where, as in Florida, a defendant was convicted of burglary for entering a fenced area that was not completely enclosed. To the contrary, the state appellate court in *Calhoon* distinguished *McCovens*, *Joy*, and *Gray* in reversing a burglary conviction on the ground that the "fence surrounded only three sides of" the outdoor space entered by the defendant, "leaving the fourth completely open." *Calhoon*, 842 N.E.2d at 435–36. It follows that *James*, which considered a burglary statute criminalizing entry into partially enclosed curtilage to be broader than generic burglary, does not take Indiana burglary outside the definition of generic burglary.

The other decisions cited by Perry are even further afield. In *United States v. Wenner*, 351 F.3d 969 (9th Cir. 2003), and *United States v. Bennett*, 100 F.3d 1105 (3d Cir. 1996), the courts held that the Washington and Pennsylvania burglary statutes, respectively, were non-generic. But both statutes encompass circumstances where the defendant enters a movable conveyance—railway cars in Washington, *Wenner*, 351 F.3d at 972, and automobiles in Pennsylvania, *Bennett*, 100 F.3d at 1109—which takes them outside the definition of generic burglary. See *Mathis*, 136 S. Ct. at 2250 (distinguishing Iowa burglary from generic burglary on the ground that "Iowa's statute … reaches a broader range of places: 'any building, structure, *[or] land, water, or air vehicle*'") (emphasis and brackets in original); *Shepard*, 544 U.S. at 15–16 ("The [ACCA] makes burglary a violent felony only if committed

in a building or enclosed space ('generic burglary'), not in a boat or motor vehicle"); *United States v. Haney*, 840 F.3d 472, 475 (7th Cir. 2016) (concluding that certain Illinois burglary statutes from the 1970s were nongeneric because they applied to vehicles). Indiana burglary does not cover vehicles or other movable conveyances.

In sum, Perry "has not identified," and we have not found, "any case in which [Indiana's] judiciary affirmed a [burglary] conviction that penalized acts" inconsistent with the generic offense of burglary. *Yates v. United States*, 842 F.3d 1051, 1053 (7th Cir. 2016). It follows that Perry's two Indiana burglary convictions were valid predicate offenses under § 924(e)(2)(B)(ii), and therefore that his § 924(e)(1) sentencing enhancement was warranted.

We also reject Perry's contention that the district court mishandled his argument at sentencing that the two § 922(g)(1) counts to which he pleaded guilty were multiplicitous. Putting aside the question whether Perry waived this contention by entering an unconditional guilty plea, see *United States v. Combs*, 657 F.3d 565, 568–69 (7th Cir. 2011), it fails on the merits because his conduct clearly supports the two separate counts. Perry violated § 922(g)(1) when he purchased ammunition from Wal-Mart on May 22, 2013. The store's surveillance footage shows that he possessed the ammunition but not a firearm, and his receipt confirms that he did not purchase a firearm along with the ammunition. Accordingly, the firearm and shotgun must have been "acquired separately," which supports the two separate charges. *United States v. Buchmeier*, 255 F.3d 415, 423 (7th Cir. 2001). Any error in the district court's failure to spell this out at the sentencing hearing is harmless given the clarity in the

record regarding Perry's conduct. It also bears mention that the additional § 922(g)(1) conviction resulted in no additional time to Perry's overall sentence, as the sentences on both counts run concurrently—which is precisely what Perry requested to remedy what he viewed as the two improperly duplicative counts. See *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005) ("[T]he judge's failure to discuss an immaterial or insubstantial dispute relating to the proper sentence would be at worst a harmless error.").

AFFIRMED