Mort LESLIE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–8806–CR–580.

Supreme Court of Indiana.

Aug. 21, 1990.

Aaron E. Haith, Choate, Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. and Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Mort Leslie was tried before a jury and convicted of burglary, a class C felony, Ind.Code § 35–43–2–1 (West 1986). The jury also determined that he was an habitual offender, Ind.Code § 35–50–2–8.[1] The trial court sentenced him to five years imprisonment for the burglary and added thirty years imprisonment for being an habitual offender. We affirm.

Leslie raises four issues on appeal:

I. Whether the trial court erred by admitting evidence of a one-person showup and the subsequent identification testimony in court.

II. Whether the trial court erred by allowing into evidence statements the defendant made to the police.

III. Whether the evidence was sufficient to support the conviction.

IV. Whether the trial court erred by not allowing the defendant to argue the potential penalty during the habitual offender phase of the trial.

On the evening of February 25, 1984, Albert Cornell, an employee of the Honeywell Protection Services, received a radio dispatch informing him that the alarm at the Pakway Container Corporation had been triggered. Approximately ninety minutes after receiving the dispatch, Cornell arrived at Pakway and began circling the building in his pickup truck.

---

1. On July 26, 1984, Leslie was sentenced for being an habitual offender under Ind.Code § 35–50–2–8 (West Supp.1983). Ind.Code § 35–50–2–8 has been amended several times since this date; however, the amendments were not retroactive. *See* Ind.Code § 35–50–2–8 (West Supp.1990).

As Cornell passed the southeast corner of the building, he noticed a hole in the overhead door. He parked about fifteen feet from the building with his headlights on bright and aimed in the direction of the hole. Within a few moments, Cornell observed a man exit the hole. The man then ran under a fence out of Cornell's sight. Cornell radioed for the police and drove around to the front of the building where he saw the same man walking along the street. When the man noticed Cornell following him, he began running. Cornell continued following the man in his truck until he lost sight of him.

Approximately five minutes after last seeing the man, Cornell met the police at Pakway. Cornell described the burglar to the police as a black man, around thirty years old, wearing "a derby hat, flat top, brown jacket, blue jeans." He also told them in which direction the burglar had proceeded.

The police searched the area. Within five minutes, they found a person matching the initial description. He identified himself as Mort Leslie. The police took Leslie to Pakway for an eyewitness identification. As Leslie sat handcuffed in the back of the police car, Cornell was brought to the car and asked if he could identify the man. Cornell unequivocally identified Leslie as the man he had seen leaving the building, and Leslie was arrested.

On February 26th at approximately 9:37 a.m., Detective Charles Hasselburg interrogated Leslie. Hasselburg testified that he read Leslie his *Miranda* rights, explained each point, and asked Leslie to read them for himself. He then asked Leslie if he understood the rights, and Leslie answered affirmatively. Detective Hasselburg also testified that Leslie indicated he would not have signed the waiver if he had not understood his rights. Hasselburg stated that Leslie did not appear to be incapacitated during this time, to have any difficulty understanding the nature of what was occurring, or to be under the influence of drugs or alcohol. He also added that he did not make any guarantees or threats to Leslie during the questioning.

Leslie denied committing the burglary. Asked why he was in the area on the night of the burglary, Leslie explained that he was returning home from visiting a friend's house located at 2045 Park Avenue. Detective Hasselburg went to this address and discovered that both the nineteen hundred and two thousand block of Park Avenue comprised a city park.

The defense moved to suppress the statements Leslie made to Detective Hasselburg. At the suppression hearing, Leslie testified that he did not understand his rights, and that if he waived them, he did so without knowledge. He admitted to making the statements, but he explained he only made them because he had just awoken and was drowsy. He added that Detective Hasselburg did not explain his rights to him but simply gave him the paper listing the rights to read for himself. Leslie stated that he told the detective that he could not read very well, but that Hasselburg still did not read his rights aloud. When asked his reason for signing the waiver, Leslie testified that the detective told him "it wouldn't hurt me ... and told me to sign."

### I. *Leslie's Showup*

Leslie claims his identification as the burglar was so impermissibly suggestive that it violated due process and should have been suppressed. The facts show that Leslie sat alone, handcuffed, in the backseat of a police car at the crime scene, surrounded by police officers. Leslie argues this showup indicated to the witness that Leslie was the only choice in identifying the burglar.

■ Leslie's argument is a familiar one to this Court. *See, e.g., Moore v. State* (1988), Ind., 518 N.E.2d 1093, 1094; *Coker v. State* (1983), Ind., 455 N.E.2d 319. Showup identifications are not in themselves impermissible per se. They can be useful when held immediately after the crime because they allow the witnesses to view the suspect while the image of the perpetrator is still fresh in their minds. *Russell v. State* (1988), Ind., 519 N.E.2d 549. To determine whether a particular identification is impermissibly suggestive, we examine whether there is a substantial

likelihood of misidentification in light of all the circumstances. *Linthicum v. State* (1987), Ind., 511 N.E.2d 1026. Other identification procedures may be less suggestive, but not every one-person showup is a violation of due process.

■ This case closely resembles the set of facts presented in *Coker*, 455 N.E.2d 319. Like Leslie, Coker argued that returning him to the crime scene in a police car while handcuffed was suggestive. In *Coker*, the officers returned the suspect to the scene within 30 to 45 minutes following the crime. 455 N.E.2d at 321. We found that this showup was not unduly suggestive. Leslie was returned to Pakway approximately five minutes after the witness last saw him.

This Court has sometimes been divided on whether a particular showup was unduly suggestive. *See, e.g., Samaniego v. State* (1990), Ind., 553 N.E.2d 120 (DeBruler, J., with Dickson, J., concurring in result with opinion). In other cases, like *Coker*, we have substantially agreed that the presentation of the defendant to the victim was acceptable. (Prentice, J. concurring in result without opinion, 455 N.E.2d at 322). We find that the showup involving Leslie was much like the one approved in *Coker* and conclude that it was not impermissibly suggestive.

Leslie further contends that Cornell's in-court identification should have been suppressed because it was the product of a suggestive showup.

■ Even when a pre-trial identification procedure is unduly suggestive, an identification in-court would still be admissible if it has a basis independent from the suggestive procedure. *Lyons v. State* (1987), Ind., 506 N.E.2d 813. Cornell was able to view the perpetrator for a fairly extensive period of time with his bright headlights aimed at him. He accurately described the burglar, and that description matched Leslie's appearance. Only a short period of time elapsed between the witness's last viewing of the burglar and his identification of the appellant as the perpetrator. In addition, Cornell identified Leslie without hesitation as the perpetrator.

These facts illustrate that a basis independent of the showup existed. The trial court was correct in allowing Cornell to identify Leslie at trial.

## II. *Admissibility of Leslie's Statement*

Leslie next argues that the trial court erred by allowing testimony concerning his February 26 statement to Detective Hassleburg. Appellant maintains that he did not intelligently or voluntarily waive his *Miranda* rights. In addition, he asserts that the circumstances surrounding the statement demonstrate it was not voluntary. Counsel asserts that his client suffered from inexperience, drowsiness, inability to read, and a general lack of comprehension.

■ The State bears the burden of proving that an accused knowingly and voluntarily waived his *Miranda* rights and voluntarily gave a statement. *Riley v. State* (1987), Ind., 506 N.E.2d 476, 479. In determining whether the State met its burden, we consider all the circumstances surrounding the statement. *Id.*

■ At the hearing on Leslie's motion to suppress, the only witnesses were Leslie and Detective Hasselburg. Each told a different version of what occurred when the waiver was signed and the statement made. Hasselburg testified that he explained the waiver form and that Leslie indicated he understood it and signed it. We cannot say there was insufficient evidence to support the trial court's ruling that Leslie was aware of what transpired when he made the statement.

## III. *Sufficiency of the Evidence*

Leslie also claims that the evidence was insufficient to sustain his conviction for burglary. He argues the identification was too suspect to support a guilty verdict. Because we uphold the trial judge's decision to admit Cornell's identification of Leslie, however, this argument must fail.

■ We will not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. Rath-

er, we look to the evidence and the reasonable inferences therefrom which support the verdict of the jury. If there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt, then the conviction must be affirmed. *Jackson v. State* (1986), Ind., 490 N.E.2d 1115, 1117 (citing *Smith v. State* (1981), Ind., 275 Ind. 642, 419 N.E.2d 743). Cornell's testimony was properly admitted, and it alone was sufficient to support the conviction.

### IV. *Argument on Habitual Penalty*

Leslie contends that the trial court erred in overruling his objection to the State's motion in limine. He claims he should have been allowed to tell the jury during final argument about the thirty additional years which would be imposed if he were found to be an habitual offender. He asserts that the trial court's decision to prevent him from arguing this point before a jury invades the role of the jury and thus violates article I, Section 19 of the Indiana Constitution.[2]

■ The State responds to appellant's argument by stating that this error was waived when appellant failed to make an offer to prove at trial. The State's assertion is incorrect because it relates to the use of evidence, and not to presentation of an argument. *See* Ind. Trial Rule 43(C) and Ind.Trial Rule 46.[3]

■ The purpose of the motion in limine is to keep potentially prejudicial information from being presented to the jury until the trial court has ruled on its admissibility during the trial. *Inman v. State* (1979), 271 Ind. 491, 393 N.E.2d 767. The authority to grant such motions derives from the trial court's inherent power to admit and exclude evidence and is consigned to the discretion of the trial court. *Id.*

2. Ind. Const. art. I, § 19 states: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts."

3. Defense counsel probably should have requested relief from the order in limine. However, "it is sufficient that a party at the time the order of the court is made ... makes known to

■ Leslie merely reiterates an argument similar to the one we rejected in *Comstock v. State* (1980), 273 Ind. 259, 406 N.E.2d 1164. In *Comstock,* we held that a jury must be instructed upon matters of law which are necessary for their information in giving their verdict. Since juries no longer fulfill any function regarding sentencing, however, the amount of penalty prescribed by the legislature is irrelevant. *Id.* at 263, 406 N.E.2d 1164 (quoting *Debose v. State* (1979), 270 Ind. 675, 389 N.E.2d 272).

The law is settled in this area; the trial court did not err in granting the motion in limine. It shielded the jury from hearing a matter which could compromise the jury's task in assessing guilt or innocence. The jury could have reached a verdict to the defendant's benefit or detriment in order to reach a certain number of years of imprisonment. *Debose v. State* (1979), 270 Ind. 675, 389 N.E.2d 272.

We affirm the judgment of the trial court.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.

the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a[n] ... order at the time it is made, the absence of an objection does not thereafter prejudice him." Ind.Trial Rule 46.