**Larry ROBINSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–9611–CR–400.

Court of Appeals of Indiana.

June 19, 1997.

Charles E. Stewart, Jr., Appellate Public Defender, Crown Point, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

GARRARD, Judge.

Larry Robinson ("Robinson") appeals his convictions for 2 counts of voluntary manslaughter both as Class A felonies, claiming that the trial court erred by denying his motion for a continuance prior to trial, for admitting evidence of gang membership, and for admitting a witness' identification of Robinson as one of the men who shot the two victims. We affirm.

## FACTS

In the early morning hours of August 11, 1995, Richard Sliezak and Kenneth Lewis drove to Gary, Indiana in their motor home in search of drugs. After their arrival in Gary, Sliezak and Lewis stopped to speak with a group of men which included Robinson. A short time later, shots were fired inside the motor home and Robinson was seen fleeing from the motor home. An eyewitness also testified that she overheard Robinson say that he had killed the two men and asked what he should do with the gun. Both Sliezak and Lewis died from gunshot wounds suffered inside the motor home.

On October 23, 1995, the State filed an information charging Robinson with two counts of murder for the slayings of Sliezak and Lewis. Robinson's trial on the murder charges began on June 3, 1996. On the first day of the trial, Robinson was informed that Janeth Alexander ("Alexander"), an eyewitness, had finally been located by the State. Robinson then made a motion to continue the trial to allow him time to take Alexander's deposition. The trial court denied this motion for a continuance.

During the trial, the State called Dennis Cardwell ("Cardwell") to testify against Robinson. After Cardwell claimed he had no knowledge of the shootings, the State confronted Cardwell with a statement that he had made to Detective Irons ("Irons") on October 24, 1995. Cardwell initially denied giving a statement, but eventually admitted that he had made a statement and verified that his signature was at the bottom of each page of the statement.[1] Notwithstanding his acknowledgment of the statement, Cardwell testified that he did not identify Robinson as one of the men who shot the two victims. Ultimately, Cardwell claimed that the statement was a fabrication of the police. The State then, over the objection of Robinson, asked Cardwell if he had told Irons that he was a Gangster Disciple. After Cardwell stepped down, the State called Irons to testify. Irons testified that he questioned Cardwell on October 24, 1995, and took his statement concerning the shootings. During this questioning, Cardwell made an oral statement about the shootings which Irons then reduced to writing. When asked whether Cardwell had identified Robinson as one of the "shooters," Robinson objected on the grounds of hearsay and stated that Irons could not testify to what Cardwell had said when Cardwell had already denied making the statement. The trial court overruled the objection stating that Irons could testify about Cardwell's identification of Robinson under Indiana Rule of Evidence 801(d)(1)(C). Irons then testified that Cardwell had identified Robinson as one of the shooters.

After testifying that he was the commander of the gang tactical unit, Irons stated that a tattoo bearing the letters GD stood for Gangster Disciple. Near the end of the trial, the State sought to have Robinson display his tattoo bearing the letters GD to the jury. Robinson objected on several grounds. The State argued that this display showed that both Robinson and Cardwell were Gangster Disciples, thus explaining Cardwell's bias. The trial court agreed with the State and ordered Robinson to show his tattoo to the jury.

After hearing all the evidence, the jury convicted Robinson of two counts of voluntary manslaughter, both as Class A felonies. The trial court sentenced Robinson to an aggregate of thirty-five years on July 2, 1996. Robinson appeals these convictions.

## ISSUES

Robinson raises three claims on appeal which we restate as:

I. Whether the trial court erred by denying Robinson's motion for a continuance to take the deposition of Alexander.

II. Whether the trial court erred by admitting evidence of Robinson's and Cardwell's gang membership.

III. Whether the trial court erred by allowing Irons to testify about Cardwell's identification of Robinson as one of the men who shot the victims.

## DISCUSSION

### I. Denial of Continuance

Robinson first claims that the trial court erred by denying his motion for a continuance to take the deposition of Alexander. In his argument, Robinson does not attempt to show how he was harmed by this denial. Instead he simply asserts that the denial was reversible error. The State argues that the trial court did not err and, alternatively, that any error was harmless because Robinson took Alexander's deposition before she testified. We agree with the State's alternative argument.

Initially, we note that trial courts are given wide discretion in discovery matters and a trial court's order will not be overturned absent clear error and resulting prejudice. *Vanway v. State,* 541 N.E.2d 523, 527 (Ind.1989). "When alleging trial court error and arguing for reversal, an appellant must show error and impact upon the appellant's substantial rights to prevail." *Hardin v. State,* 611 N.E.2d 123, 132 (Ind.1993); *see also* IND.TRIAL RULE 61. Even were we to assume an error, we fail to find any prejudice

---

1. We note that Cardwell did not admit to giving the statement until after the trial court admonished him, outside the presence of the jury, about the dangers of perjury.

to Robinson. Robinson sought the continuance to take the deposition of Alexander and despite the denial of his motion, Robinson was able to take Alexander's deposition before she testified. We, therefore, hold that any potential error that occurred was harmless.

## II. Evidence of Gang Membership

In his second claim, Robinson argues that evidence of his and Cardwell's gang membership was erroneously admitted by the trial court. Robinson claims that this evidence was inadmissible under Indiana Rules of Evidence 404(b) and 403. The State counters that the evidence of gang membership was introduced solely to show Cardwell's bias, not in an attempt to show Robinson acted in conformity with gang activities and that the probative value of Cardwell's bias was not substantially outweighed by any unfair prejudice that resulted from the introduction of this evidence. Once again, we agree.

■ Under Indiana Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, evidence of other wrongs is admissible for purposes other than showing action in conformity therewith. *Id.* "In determining whether evidence of the prior acts of misconduct may be admitted at trial, the trial court must determine 1) whether the evidence may be admitted for the purpose acceptable under Rule 404(b), and 2) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Brown v. State,* 659 N.E.2d 652, 655 (Ind.Ct.App.1995), *trans. denied.* Essentially the trial court must first determine whether the evidence satisfies EVID.R. 404(b) and, if it does satisfy this rule, the trial court then must determine whether the otherwise relevant evidence is rendered inadmissible by EVID.R. 403.[2]

■ We first note that EVID.R. 404(b) is not limited solely to evidence of prior crimes, but includes "any conduct of the defendant which may bear adversely on the jury's judgment of his character." *Kimble v. State,* 659 N.E.2d 182, 184 n. 5 (Ind.Ct.App.1995), *trans. denied.*[3] Without determining whether gang membership qualifies as misconduct under EVID.R. 404(b), we will assume for the purposes of our analysis that the evidence of Robinson's gang membership qualifies as misconduct. Evidence of uncharged misconduct is only rendered inadmissible by EVID.R. 404(b) if "it is used for the sole purpose of suggesting to the jury that the defendant possesses certain character traits, as exhibited in the prior uncharged conduct, and that the defendant acted in conformity with those character traits in the present, charged crime." *Hardin,* 611 N.E.2d at 128. As the State notes, it introduced the evidence of Robinson's gang membership to explain why Cardwell recanted his statement to the police. The State's motive for introducing this evidence was to show bias, not to show that Robinson acted in conformity with gang activity. The admission of evidence of Robinson's gang membership, therefore, did not violate EVID.R. 404(b).

■ Even though the evidence of Robinson's gang membership did not violate EVID.R. 404(b), we must still determine whether the evidence of both Robinson's and Cardwell's gang membership's probative value was substantially outweighed by the danger of unfair prejudice. *Brown,* 659 N.E.2d at 655. The State introduced the evidence of both Robinson's and Cardwell's gang membership to show that Cardwell was biased in favor of Robinson. This bias, the State argues, explains why Cardwell claimed not to have identified Robinson as the person who shot the two victims. Evidence of a witness' bias is admissible to attack the witness' credibility. IND.EVIDENCE RULE 616. Additionally, because Cardwell's statement to Irons

---

**2.** EVID.R 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ."

**3.** Because the analysis under Indiana Rule of Evidence 404(b) applies only to the defendant, we need not analyze the evidence of Cardwell's gang membership under this rule. We need only analyze the evidence of Cardwell's gang membership to determine whether it was relevant under Indiana Rule of Evidence 402 and whether it satisfies Indiana Rule of Evidence 403.

was the only eyewitness testimony about who shot the victims, Cardwell's bias was not only relevant under Indiana Rule of Evidence 402, but also highly probative. This evidence of bias was critical because the jury was required to decide whether to believe Cardwell's claim that the police fabricated his statement or Irons' testimony that Cardwell identified Robinson as one of the shooters.

Robinson claims that even if we find the evidence to have probative value, it is unduly prejudicial because gang membership is viewed negatively by the public. While we agree that evidence of gang membership may contain some inherent prejudice, prejudice alone is not sufficient to render this evidence inadmissible. The danger of unfair prejudice must substantially outweigh the evidence's probative value. EVID.R. 403. Robinson and Cardwell were, at most, slightly prejudiced by the evidence associating them with a gang, while the evidence of Cardwell's bias was critical to the State's claim that Cardwell recanted his prior identification to protect Robinson. We hold that though there may be some inherent prejudice in being identified as a gang member, this prejudice did not substantially outweigh the high probative value of the evidence of Cardwell's bias. The trial court therefore did not err by admitting the evidence of both Robinson's and Cardwell's membership in the Gangster Disciples.

### III. Identification Evidence

In his final claim, Robinson argues that the trial court erred by allowing Irons to testify that Cardwell identified Robinson as one of the men who shot the victims. Robinson argues that Irons' testimony could not be admitted as a prior inconsistent statement because Cardwell had denied making the statement at trial and the statement to which Irons testified was not made under oath, therefore making the admission of Irons' testimony erroneous. Ignoring the trial court's statement that Irons' testimony was admitted as an identification under Indiana Rule of Evidence 801(d)(1)(C), Robinson, in essence,

claims that Irons' testimony was hearsay. The State argues that Irons' testimony was admissible as an identification under EVID.R. 801(d)(1)(C) and, alternatively, that the admission of this evidence was harmless.

Indiana Rule of Evidence 801(d)(1)(C) provides that statements are non-hearsay if "[t]he declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (C) one of identification of a person made shortly after perceiving the person...." In the present case, Cardwell, the declarant, testified at trial and was cross-examined about the statement he gave to Irons identifying Robinson as one of the men who shot the victims. Because Cardwell testified at trial and was subject to cross-examination on the identification he made, the question becomes whether Cardwell's identification of Robinson "was made shortly after perceiving the person." EVID.R. 801(d)(1)(C).

Cardwell made his statement to Irons on October 24, 1995, two months and 13 days after the shootings. The issue, then, is whether two months and 13 days qualifies as an identification made shortly after perceiving Robinson. Our research revealed no Indiana case law defining the term "shortly" in the context of the EVID.R. 801(d)(1)(C). When confronted with similar issues, we may look to guidance from interpretations of the Federal Rules of Evidence, though we are not bound by them. *Dowdy v. State*, 672 N.E.2d 948, 951 (Ind.Ct.App.1996), *reh'g denied, trans. denied.* Federal Rule of Evidence 801(d)(1)(C) is identical to Indiana Rule of Evidence 801(d)(1)(C) in all but one aspect. Unlike the Indiana rule, the federal rule only requires that the identification be made after perceiving the person, not *shortly* after perceiving the person.[4] Though the federal rule provides no guidance as to the term "shortly," it is useful to look at the rationale behind the federal rule to better understand the purpose of our Indiana Rule.

The advisory Committee Notes on the Federal Rule state that identifications,

---

**4.** In fact, under the federal rule it is clear that Cardwell's identification made over two months after the crime would be admissible. *See United* States v. O'Malley, 796 F.2d 891 (7th Cir.1986)(identification made four months after the crime admissible).

such as the one Irons testified about, are defined as non-hearsay because "the context of a formal proceeding, an oath, and the opportunity for cross-examination provide firm additional assurances of the *reliability* of the prior statement." FED.R.EVID. 801(d)(1)(C) advisory committee's note (emphasis added). This note emphasizes that the focus of this rule is that the reliability of the identification is assured by the declarant's presence and testimony at trial. "The reasons for admitting identification statements as substantive evidence are that out-of-court identifications are believed to be more reliable than those made under the suggestive conditions prevailing at trial, and the availability of the declarant for cross-examination eliminates the major danger of hearsay testimony." *United States v. Elemy*, 656 F.2d 507, 508 (9th Cir.1981).[5] One of the reasons for the creation of this rule was to remedy the situation where a witness identifies the defendant before trial and then at trial, because of fear or other reasons, recants the previous identification. *Id.* "The Advisory Committee's Note to Federal Rule 801(d) ... explains that these instances are excluded from the definition of hearsay because they do not depend on the rationales of reliability that undergird other exceptions to the hearsay rule." 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE § 801.401, at 510 (2d ed.1995). From these sources, we find that the EVID.R. 801(d)(1)(C) defines identifications made by a declarant subject to cross-examination as non-hearsay because they are believed to be reliable.

Even so, we must consider the significance of the addition of "shortly" to the Indiana version of this rule. The only difference between the Federal Rule and the Indiana Rule is the addition of the word "shortly." Our analysis is hampered by the absence of advisory notes to the Indiana Rules of Evidence. Notwithstanding this lack, we believe that the requirement that the identification be made "shortly after perceiving" was added to further buttress the reliability and accuracy of the identification.

5. We note that the reliability premise is satisfied even where, as here, the declarant denies making the statement because the fact finder is squarely

In identification questions our decisions have frequently recognized the added accuracy of an identification made shortly after the occurrence of the event when memory is the freshest. *See, e.g.,. Leslie v. State*, 558 N.E.2d 813, 815 (Ind.1990).

We note that the term "shortly" is relative rather than precise. We believe it was chosen to permit courts to effectuate the purpose of the rule in the context of the facts before the court. In the present case, the purpose of assuring the necessary reliability has been met. Cardwell testified that he knew Robinson and that the two were friends. He literally identified Robinson by perceiving him at the time of the event. To the extent that the rule contemplates communication of the identification to another person, Cardwell's familiarity with Robinson and his communication of the identification to the police within two and a half months after the shootings satisfies that purpose. Because Cardwell testified at trial and was subject to cross examination concerning the statement, and because his statement was one of identification made shortly after perceiving the person, it was properly admitted over the hearsay objection.

Affirmed.

HOFFMAN and RILEY, JJ., concur.

confronted with the resolution of credibility in light of the demeanor of the witness while testifying.