**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Aug 08 2012, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MATTHEW D. BARRETT**
Matthew D. Barrett, P.C.
Logansport, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEREK PATTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  09A02-1111-CR-1046 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CASS SUPERIOR COURT
The Honorable Richard A. Maughmer, Judge
Cause No. 09D02-1108-FB-28

**August 8, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Derek Patton appeals his convictions for Criminal Confinement,[1] a class B felony, and Aggravated Battery,[2] a class B felony, raising various evidentiary errors. Patton also challenges the sufficiency of the evidence and argues that Indiana's Double Jeopardy Clause prohibits convictions for both offenses. Concluding that there was no double jeopardy violation and finding no other error, we affirm the judgment of the trial court.

FACTS

Sometime during the evening of July 28, 2011, Patton and his girlfriend, April Burris, went drinking with friends at various bars in Logansport. Patton and Burris had known each other since childhood, had recently become engaged to each other, and were living together.

When Burris and Patton returned to their apartment complex, Patton, who was intoxicated, became angry and began to hit Burris in the face in the front yard. As the two moved into the building where they shared an apartment, Patton continued striking Burris in the face. Smears of blood were left on the hallway light switch. Patton refused to allow Burris to leave the apartment and she lost consciousness at some point during the episode.

The apartment showed additional signs of the altercation. For instance, blood was left on a towel that Burris had used to clean up, and blood from the beating was found on

---

[1] Ind. Code § 35-42-3-3(a)(1); I.C. § 35-42-3-3(b)(2)(B).

[2] I.C. § 35-42-2-1.5.

the door molding, the bathroom floor, and the shirt and shorts that Burris was wearing that night. A large hole in the bathroom wall had blood around it and long hair stuck in it. As Burris later described, the apartment had "blood everywhere" and looked like someone had been "murdered" there. State's Ex. 29.

Patton also showed physical signs of the beating. For instance, both of his hands had fresh injuries to his knuckles, and his shorts had blood on them. After hitting Burris numerous times, Patton ordered her to shower and clean herself off. Patton then left the bathroom to use the phone. Burris, who was naked, fled out the backdoor of the apartment and stole a beach towel from a neighbor to wrap around herself.

A short time later, Evan Clem, who lived nearly two blocks away, found Burris lying in his driveway. Burris was naked but for the towel that was wrapped around her. She was lying on her stomach partially under a truck. Burris told Clem that she had been beaten and asked him to call the police for her, which he did. Burris stood up and started to walk back toward Broadway Street. Burris was still bleeding from her facial injuries at the time.

A few minutes later, Logansport Police Officer John Rogers intercepted Burris as she was walking down the street. Officer Rogers noticed that Burris was distraught, crying, and afraid. Burris reported that when she and Patton returned from one of the bars, he "beat the hell" out of her. Tr. p. 73, 88, 223. Officer Rogers observed that Burris had sustained a cut to her face and had scratches and redness around her neck.

3

Burris reported that her throat hurt and was having problems swallowing. As a result, Officer Rogers called for medics.

Sergeant Travis Yike also arrived on the scene and saw Burris's facial injuries. Sergeant Yike knocked on the apartment door several times before Patton answered it. Patton was still wearing his bloody shorts and was highly intoxicated. However, Patton told the officers that he had been asleep. Sergeant Yike observed blood in the apartment and noticed the fresh injuries to Patton's hands. Patton reported to one of the officers that he did not know what had happened to Burris, that he had been at the bar, came home, and "passed out." Tr. 238.

Burris was transported to Logansport Memorial Hospital, where she reported the beating to Lana Stout, a registered nurse, and Dr. Kevin O'Brien. Burris told them that she had become dazed during the beating and could not remember everything. Dr. O'Brien observed that Burris had a 1.5 centimeter cut across her nose that required six stitches, and severely swollen and bruised eyes. Burris also had swelling on her left temple, large abrasions on her back, and sore spots on the top of her head. Because of the extent of the facial and nasal swelling, Dr. O'Brien ordered a CT scan, which revealed that Burris had sustained several fractures in her nasal bones, as well as fractures to both eyes. The fracture line extended to Burris's sinus.

In sum, it was determined that Burris had sustained "multiple facial fractures," including "nasal and orbital floor fractures," which were significant injuries that would

4

take months to heal. Tr. p. 85, 179, 187. Dr. O'Brien opined that the injuries inflicted on Burris indeed caused a substantial risk of death.

At the hospital, Burris informed Officer Rogers that she wanted to pursue charges against Patton. Officer Rogers prepared a battery affidavit in accordance with the information that he received from Burris and reviewed it with her. Burris indicated that she understood the contents of the affidavit and signed it.

Patton was later arrested and charged with the following offenses: Count I, Criminal Confinement, a class B felony; Count II, Aggravated Battery, a class B felony; Count III, Battery Resulting in Serious Bodily Injury, a class C felony; and Count IV, Strangulation, a class D felony.

Between the date of his arrest on July 29 to posting bail in early September, Patton called Burris over 400 times from the jail in violation of a no contact order. During the first call on July 31, Patton suggested to Burris that she did not really know what happened and asked her what she had told the police. Patton told Burris that he hoped she would say that she did not know or remember what happened. Burris told Patton that her face was "broken," that she could not eat, and that she had bruises all over her body. State's Ex. 29. Burris stated that she thought she was going to die, and Patton admitted that he "fu*ked up good," but urged Burris to bail him out and get a local phone number. Id.

In a telephone call on August 3, Patton told Burris that she was his "backbone" and that he needed her to "take care of this," that with "no face" the State had "no case,"

5

and that the State had no other witnesses against him. State's Ex. 29. In a call on September 4, Patton told Burris, not to "start running [her] fuc*ing mouth," that he "dared her" to say "something slick," and that she would "wish" she had never said that he talked down to her. State's Ex. 29. Later that same evening, Burris left a voicemail to Patton that he was talking her down "that night" and told her that he would laugh if she "got her ass beat" and that he obviously hits women. Id. Patton replied that he knew what she was trying to do and she could "go to hell." Id.

A three-day jury trial commenced on September 28, 2011. At trial, Burris completely recanted her claims that Patton had caused her injuries. Burris claimed that she could not remember what she had told the police officers that night, but later testified that she had lied to the officer that night when she told him that Patton had beaten her and caused her injuries. Burris also testified that a man named "David" had beat her. Tr. p. 71-72, 98-103, 112-15, 123-25, 133. Burris claimed that Patton became angry when she came home with injuries and would not let her take a shower and go to bed, so she got angry at Patton. Burris also testified that she never told anyone about the incident, except for her best friend "Amy" that "David" had caused her injuries. Id. at 92, 101, 131. Burris also claimed that she could not remember exactly what she had told Nurse Stout or Dr. O'Brien about who caused her injuries.

Based in part on a pre-trial hearing on Evidence Rule 804(b)(5), which encompasses the "forfeiture by wrongdoing" exception to the hearsay rule, the trial court found that Burris was unavailable to testify and admitted the statements into evidence

6

that she made to Officer Rogers. With no objection from Patton, the trial court admitted the battery affidavit into evidence. And over Patton's relevance and general prejudice objections, the trial court admitted five of the nearly 400 jail calls that Patton placed to Burris from the jail.

After the State rested its case, Patton moved for a directed verdict. Patton argued that Dr. O'Brien had testified that Burris was not in danger and that Nurse Stout said that Burris was not dying. Patton also argued that there was no proof that he held Burris in the apartment against her will because she freely exited the residence. The trial court denied Patton's motion. Patton then rested his case and renewed his motion for a directed verdict, which the trial court again denied. The jury found Patton guilty of confinement and both battery charges, and not guilty of strangulation.

The trial court conducted a sentencing hearing on November 7, 2011. The trial court vacated the class C felony battery conviction and sentenced Patton to consecutive twenty-year sentences for the class B felony confinement and class B felony aggravated battery convictions.

Patton now appeals.

## DISCUSSION AND DECISION

### I. Affidavit for Battery

Patton first claims that the trial court erred in admitting the battery affidavit that Burris executed into evidence. Specifically, Patton argues that the affidavit was improperly admitted because Burris did not read the affidavit when she signed it. Patton

7

also contends that Indiana Evidence Rule 803(5) prohibited the admission of the affidavit into evidence because Patton did not offer it.

In addressing this issue, we initially observe that Patton did not object when the State offered the affidavit into evidence. Thus, the issue is waived. See Kubsch v. State, 784 N.E.2d 905, 923 (Ind. 2003) (holding that the failure to object at trial to the admission of evidence results in waiver of that issue on appeal).

In an effort to avoid waiver, Patton seeks review under the fundamental error doctrine. Fundamental error is "extremely narrow" and applies only when the error comprises a blatant violation of basic principles, the harm or potential for harm is substantial, and the error results in the denial of fundamental due process. Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006). Fundamental error applies only when the error is so prejudicial that it makes a fair trial impossible. Schmidt v. State, 816 N.E.2d 925, 944 (Ind. Ct. App. 2004).

> In this case, the affidavit for battery provided as follows:
>
> Comes now April Lynn Burris, the undersigned affiant, and says that on the 28th day of July, 2011, at 2214 East Broadway, Logansport, Cass County, Indiana, Derek Patton . . . did knowingly or intentionally touch April Lynn Burris . . . in a rude, insolent or angry manner that caused bodily injury as follows: cut to face (nose), red marks on neck, bruising right eye, sore neck/throat, swelling—face, red mark on the top of head—in hair line.
>
> I affirm under the penalties for perjury that the foregoing statements are made from my own direct knowledge of the incident herein alleged and are true.

State's Ex. 2.

8

Here, the battery affidavit contained hearsay because there was a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c)). Hearsay is generally inadmissible. Ind. Evid. R. 802. However, Indiana Evidence Rule 803(5) provides that a recorded recollection is not excluded by the hearsay rule:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

This exception to the hearsay rule applies if the following foundation is satisfied: (a) the memorandum or record relates to a matter about which a witness once had knowledge; (b) the witness has insufficient recollection at trial to enable the witness to testify fully and accurately; (c) the witness is shown to have made or adopted the memorandum or record; (d) the memorandum or record was adopted when the matter was fresh in the witness's memory; and, (e) the memorandum or record is shown to reflect the witness's knowledge correctly. Impson v. State, 721 N.E.2d 1275, 1282-83 (Ind. Ct. App. 2000).

Here, Patton challenges two of the five-part foundation regarding admission of the affidavit: 1) that Burris had recollection at trial of her statements to Officer Rogers; and 2) that Burris never vouched for the accuracy of the affidavit. Appellant's Br. p. 12-13. The battery affidavit clearly relates to Patton's attack on Burris. And at trial, Burris

9

recanted and was very selective about what she recalled stating to various individuals. Burris testified in a very confusing manner that she did not remember telling Officer Rogers that Patton beat her, but she did remember telling the officer that Patton assaulted her because she was angry with him for not letting her take a shower and go to bed. Tr. p. 73, 79, 88, 104, 112-15. Burris claimed that she could not remember the details of the beating and then later denied that Patton beat her at all, claiming that it was an unknown third party. Id. at 98-103, 123-25.

In our view, Burris's partial recollection and her denial of the specifics of the attack serves as the "insufficient recollection" required by (b) above. In other words, Burris's partial and selective recollection of the events and her version of the events that changed constantly prevented her from testifying "fully and accurately." Thus, the admission of the battery affidavit was necessary not only to establish Burris's recollection at the time of the beating, but also to alleviate any confusion that Burris intentionally created at trial about what she said that night to the police officer. See Smith v. State, 719 N.E.2d 1289, 1291 (Ind. Ct. App. 1999) (finding that under Rule 803(5), a witness's memory need not be "completely exhausted" and that the witness' statement that he could not remember some events was enough for the court to find that his memory could not be sufficiently refreshed to testify "fully and accurately").

Burris's selective and partial recollection satisfied the foundational requirement that she had "insufficient recollection" to testify "fully and accurately." She signed the affidavit on the same day as the attack and acknowledged that she signed it, which shows

10

a timely adoption of the statement while the matter was fresh in her memory. Tr. p. 85-86. The details in the affidavit are consistent with the initial statements made by Burris to Officer Rogers and to Nurse Stout and Dr. O'Brien, which shows that it accurately reflected Burris's knowledge.

Finally, Burris testified at trial that she remembered the officer preparing a piece of paper and that she signed it. Tr. p. 85-86. Officer Rogers testified that he prepared the affidavit, reviewed it with Burris, and Burris told him that she understood it. Id. at 240-41. Burris then signed the affidavit. Id. at 242. By signing the affidavit after the officer reviewed it with her, Burris adopted the content of the affidavit at that time and professed its accuracy. Because the foundation for the admission of the exhibit was established, the trial court properly admitted the substance of the exhibit into evidence on this basis.

On the other hand, we agree with Patton's contention that the affidavit itself should not have been admitted into evidence. Rather, it should have been read verbatim into the record. Rule 803(5) states that "[i]f admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party." Patton did not offer the exhibit into evidence.

In any event, the admission of the substance of the affidavit, whether read verbatim into evidence or admitted as an exhibit, was harmless error, not fundamental error. "[A]n error is harmless if the probable impact of the evidence upon the jury is sufficiently minor so as not to affect a party's substantial rights." Turner v. State, 878 N.E.2d 286, 294 (Ind. Ct. App. 2007). Moreover, the admission of evidence that is

11

merely cumulative of other, properly admitted evidence generally does not warrant reversal of a conviction. Johnson v. State, 845 N.E.2d 147, 150 (Ind. Ct. App. 2006).

In this case, the battery affidavit was cumulative of the initial statements that Burris made to Officer Rogers, as well as the statements that she made to Nurse Stout and Dr. O'Brien, that Patton beat her and injured her.

Patton makes no challenge on appeal to the admission of Burris's statements to the medical professionals, the affidavit was cumulative of the numerous photographs showing Burris's severe injuries that are more graphic than the description of her injuries in the affidavit, and to Dr. O'Brien's testimony that Burris suffered fractures to her nose and eyes. In short, the evidence presented at trial against Patton was overwhelming. Thus, we cannot say that Patton was denied a "fair trial" by the admission of this exhibit in any form.

## II.  Hearsay Statements by Burris

Patton next argues that the trial court erred in admitting Burris's statements that she made to Officer Rogers into evidence because they were hearsay. More particularly, Patton contends that there was no showing that Burris was "unavailable" within the meaning of Indiana Evidence Rule 804(a)(3), because she was able to recall the conversations that she had with Officer Rogers about the incident.

We first note that the decision to admit or exclude evidence lies within the trial court's sound discretion and is afforded great deference on appeal. Bacher v. State, 686 N.E.2d 791, 793 (Ind. 1997). We will not reverse that decision absent a manifest abuse

12

of discretion resulting in the denial of a fair trial. Edwards v. State, 724 N.E.2d 616, 620 (Ind. Ct. App. 2000).

As noted above, hearsay is generally inadmissible. Amos v. State, 896 N.E.2d 1163, 1168 (Ind. Ct. App. 2008); Evid. R. 802. However, the admission of impermissible hearsay evidence is harmless error in some instances. Willis v. State, 776 N.E.2d 965, 968 (Ind. Ct. App. 2002). Reversal is appropriate only where the improper admission of evidence caused prejudice to the defendant's substantial rights. Craig v. State, 630 N.E.2d 207, 211 (Ind. 1994). The admission of evidence that is merely cumulative of other, properly admitted evidence generally does not warrant reversal of a conviction. See Johnson v. State, 845 N.E.2d 147, 150 (Ind. Ct. App. 2006). We also note that an exception under Evidence Rule 804 exists for an "unavailable" declarant. The relevant provision here is where the declarant "testifies to a lack of memory of the subject matter of the declarant's statement." Morgan v. State, 903 N.E.2d 1010, 1015 (Ind. Ct. App. 2009).

During a pretrial hearing, the State sought to show that "[Patton] has substantially contributed to lack of cooperation, absence of cooperation on behalf of Burris." Appellant's App. p. 19. During that hearing, the State offered a number of calls from the jail into evidence that Patton made to Burris, many of which occurred after a hearing that had been conducted the day before. Tr. p. 13, 19-20. The trial court determined that if Burris became "unavailable" at trial, her statements to Officer Rogers could be admitted under an exception to the hearsay rule. Id. at 35.

13

Indeed, after Burris testified at trial, recanted her allegations against Patton, and testified to a partial memory of her conversation with Officer Rogers, the trial court found that Burris was "unavailable" because she testified "to a lack of memory of the subject matter" as it related to the conversation that she had with Officer Rogers. Tr. p. 153-54. As a result, the trial court found that the evidence could be admitted under the exception to the hearsay rule. Id. at 154.

Contrary to Patton's suggestion, the trial court correctly determined that Burris was unavailable at trial. As noted above, Burris recanted, was very selective about what she remembered saying to various people, testified in a very confusing manner that she did not remember telling Officer Rogers that Patton beat her but then stated that she did remember making a general allegation, claimed that she could not remember the details of the beating, and then alleged that Patton had never beaten her, asserting that it was an unknown third party who had hit her.

We agree with the trial court's conclusion that Burris testified to a general lack of memory of her statements to Officer Rogers in which she stated that Patton had hit her repeatedly. That said, we turn to the "forfeiture by wrongdoing" exception to the hearsay rule, which provides for the admission of:

> [a] statement offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness for the purpose of preventing the declarant from attending or testifying.

14

To illustrate, in <u>Roberts v. State</u>, 894 N.E.2d 1018, 1025 (Ind. Ct. App. 2008), this court held that "a party, who has rendered a witness unavailable for cross-examination through a criminal act may not object to the introduction of hearsay statements by the witness as being inadmissible under the Indiana Rules of Evidence." And, as we acknowledged in <u>Boyd v. State</u>, 866 N.E.2d 855, 857 (Ind. Ct. App. 2007), Federal Rule of Evidence 804(b)(6) similarly does not exclude "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." <u>Id.</u> In essence, "the forfeiture of the right to confront witnesses who are unavailable to testify based on the defendant's wrongdoing may be likened to the doctrine of invited error." <u>Id.</u>

The "wrongdoing" here is Patton's continuous and incessant violation of the no contact order that was issued against him from having contact with Burris, and his pressuring Burris to recant at trial and testify that she could not remember the specific statements that she made to Officer Rogers that Patton hit her and caused her injuries. At hearings on September 26 and 27, the State admitted several of the over 400 phone calls that Patton made to Burris while he was in jail. Tr. p. 9-11. Burris testified that she and Patton had spoken several times since the no contact order was issued, and she admitted making several statements that she would not testify at Patton's trial. <u>Id.</u> at 31-32, 34. When considering even a few of these calls as examples, the trial court properly found that Patton had engaged in wrongdoing that was intended to, and did, render Burris

15

unavailable by convincing her that she had a lack of memory of the incident. As a result, Patton's claim that this evidence was improperly admitted at trial fails.

### III. Admission of Jail Telephone Conversations

Patton next claims that the trial court erred in admitting the specific jail telephone conversations into evidence that took place between him and Burris. More particularly, Patton argues that the conversations were irrelevant, they likely confused the jury, and they unfairly prejudiced Patton's presumption of innocence.

Burris's act of recanting her allegation that Patton battered her and caused her injuries became the central issue at trial. And relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evid. Rule 401. Again, the core question for the jury to decide was whether Burris made truthful statements on the night of the battery when she alleged that Patton injured her, or whether Burris made truthful statements at trial when she alleged that some third party had done the beating. In short, Burris's act of recanting and her bias toward Patton, were highly relevant to the jury's determination of her credibility. See Robinson v. State, 682 N.E.2d 806, 809-10 (Ind. Ct. App. 1997) (finding that evidence of the defendant's gang membership was relevant to show why the witness recanted at trial). Also, Patton's calls to Burris showed his control over her and the persuasion that he used to convince her to be uncooperative with the prosecution and recant at trial.

16

As noted above, in the call that was made on July 31, Patton told Burris that he hoped that she would say that she did not know what happened that night, asked Burris what she told police, encouraged Burris to get him out of jail, and tried to convince Burris that she should not "remember" what happened. State's Ex. 29. In the August 3rd call, Patton told Burris that she was his "backbone" and that he needed her to "take care of this," that with "no face" the State had "no case," and that the State had no witnesses against him so no one knew what happened. Id. In another call that was made on September 4, Patton angrily told Burris not to "run her fu*king mouth," that he "dared her" to say "something slick," and that she would "wish" she had never said that he talked her down. Id. Later that evening, Burris told Patton in a voice mail that he had been "talking her down that night" and that he "obviously hits women." Id. Patton replied that he knew what Burris was attempting to do and that she could "go to hell." Id.

In light of the above, we note that numerous cases have determined that where a relationship between parties is characterized by frequent conflict, evidence of the defendant's prior assaults and confrontations with the victim may be admitted to show the relationship between the parties and the motive for committing the crime. Iqbal v. State, 805 N.E.2d 401, 408 (Ind. Ct. App. 2004). Also, consciousness of guilt may be shown by threats or attempts to intimidate witnesses for the prosecution. Cox v. State, 422 N.E.2d 357, 361 (Ind. Ct. App. 1981).

Here, the jail calls showed the nature of the relationship between Patton and Burris, and evidence of his guilt. In the July 31st call, Patton stated that he was "very

17

sorry," that it was his "fault" that he was in jail, and that he "fu*ked up good." State's Ex. 29. This evidence was highly relevant to the jury's assessment of the relationship between Patton and Burris, her decision to recant at trial, and Patton's guilt.

Finally, we cannot say that the admission of the jail calls was unduly prejudicial to Patton, and Patton's allegation that the jury would be confused by the new criminal charges for invasion of privacy that were based upon these calls from the jail is completely unfounded. Finally, there is no showing that the admission of the jail calls into evidence undermined Patton's presumption of innocence.

The jury was never informed that there were other pending charges against Patton, let alone for invasion of privacy because of these same jail calls. And any taint to Patton's presumption of innocence arose from his calling Burris from the jail. Indeed, Patton had full knowledge from the notice given at the beginning of the calls that the State was monitoring and recording those calls. Ex. 29. Notwithstanding that knowledge, Patton chose to call Burris numerous times from the jail and exposed his own incarceration to the jury. As a result, Patton's claim that the trial court improperly admitted the calls into evidence, fails.[3]

---

[3] As an aside, we note that Patton did not object at trial to the admission of the jail calls on the basis of Indiana Evidence Rule 404(b). As a result, Patton has waived this argument. See Boatner v. State, 934 N.E.2d 184, 187 (Ind. Ct. App. 2010) (holding that a party may not object to the admission of evidence on one ground and seek reversal on appeal based on a different ground). Waiver notwithstanding, the calls were admitted to show Burris's bias over Patton and his influence over her, rather than to show Patton's propensity to batter women or his general bad character.

Patton has also waived claims under Evidence Rule 608, which provides that specific instances of wrongdoing may not be inquired into or proved by extrinsic evidence for the purpose of attacking or supporting a witness's credibility, other than a conviction for a crime as provided under Evidence Rule 609. Again, the calls were evidence of Patton's influence over her and of the nature of their general

18

IV. Directed Verdict

Patton next claims that the trial court erred in denying his motion for a directed verdict with regard to the aggravated battery and confinement charges. In essence, Patton argues that the evidence was insufficient to support his convictions on those offenses, because the State allegedly failed to prove that Patton had confined Burris, and there was no evidence of a serious bodily injury that created a substantial risk of death and/or protracted loss or impairment of a bodily member or organ to Burris.

When reviewing a challenge to the sufficiency of evidence, we do not reweigh the evidence or judge the credibility of the witnesses, and we respect "the jury's exclusive province to weigh conflicting evidence." McHenry v. State, 820 N.E.2d 124, 126-27 (Ind. 2005). We must also consider only the probative evidence and reasonable inferences that support the verdict. Id. We will affirm the conviction if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

A. Confinement

Patton was charged with confinement as follows:

On or about July 29, 2011, in Cass County, State of Indiana, Derek Patton did knowingly or intentionally confine April Burris without the consent of April Burris, resulting in serious bodily injury, to-wit: unconsciousness to April Burris. . . .

relationship to show why she recanted. They were not admitted as specific instances of any wrongdoing on Burris's part to attack her credibility.

Appellant's App. p. 22. As charged in this case, confinement is defined under Indiana Code section 35-42-3-3 as follows:

> (a) A person who knowingly or intentionally:
>
>> (1) confines another person without the other person's consent;
>
> commits criminal confinement. Except as provided in subsection (b), the offense of criminal confinement is a Class D felony.
>
> (b) The offense of criminal confinement defined in subsection (a) is:
>
> (2) a Class B felony if it:
>
>> (B) results in serious bodily injury to a person other than the confining or removing person[.]

In this case, Burris testified at trial that she fled out the back door of the apartment without any clothes on because she knew that Patton would not let her leave. Tr. p. 75-76, 126, 225. This was after the beating occurred, and Patton had ordered her to shower and clean up. The evidence also showed that Patton savagely hit Burris in the face and caused her to sustain serious injuries. Burris told Officer Rogers that the incident started in the front yard and moved upstairs into the apartment. Tr. p. 225. If Burris had been free to leave the apartment, it is reasonable to infer that she would have left the apartment before Patton could inflict such severe injuries on her. The extent of the blood left in the apartment, the property damage, and Burris's injuries, suggest that the attack was a prolonged one. Moreover, if Burris had been free to leave the apartment at any time, there would have been no need for her to flee into the street without wearing any clothing and hiding underneath a truck in someone's driveway. In short, the jury was free to reject

20

Burris's recanted trial testimony and find, based upon a reasonable interpretation of the evidence, that Patton had confined her to the apartment.

The jury was also free to reject Burris's trial testimony and conclude that the evidence supported a finding that Burris was rendered unconscious during the attack, was not merely intoxicated, and that she suffered serious bodily injury. Burris reported to both Nurse Stout and Dr. O'Brien that she lost consciousness during the attack. Tr. p. 175-76, 183-84, 198; State's Ex. 7. The bloody crime scene and Burris's severe injuries to her head and face also supported an inference that Burris lost consciousness during the attack. As a result, we find that the evidence was sufficient to support Patton's conviction for confinement.

### B. Aggravated battery

Patton was charged with and convicted of aggravated battery in accordance with Indiana Code section 35-42-2-1.5, which provides that:

> A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes:
>
> > (1) serious permanent disfigurement;
> >
> > (2) protracted loss or impairment of the function of a bodily member or organ . . .
>
> commits aggravated battery, a Class B felony.

The charging information provided that Patton knowingly or intentionally inflicted injury on Burris "that created a substantial risk of death or caused protracted loss or impairment of a bodily member or organ." Appellant's App. p. 23.

21

The State was not required to present expert testimony to establish the substantial risk of death element. Oeth v. State, 775 N.E.2d 696, 702 (Ind. Ct. App. 2002). And in reviewing a sufficiency claim concerning whether the injuries created a substantial risk of death, we examine the facts, including the nature and location of the injury, and the treatment provided. Id.

The evidence demonstrated that Patton repeatedly struck Burris in the face and on the head, causing her to sustain "multiple facial fractures," which were significant injuries that would take two to three months to heal. Tr. p. 85, 169, 179, 187; State's Ex. 7. The radiology report from the CT scan showed that Burris suffered a "moderately displaced fracture of the right nasal bone," a "subtle fracture of the nasal septum," a "subtle fracture of the medial wall the right maxillary sinus," and "mildly displaced bilateral orbital floor fractures, slightly greater in severity on the right side." State's Ex. 7. The fracture line extended into Burris's right maxillary sinus, and she experienced "blowout fractures" of both orbital floors. Tr. p. 167-69; State's Ex. 7. A "blowout" accompanies "a possibility of eye muscle problems [and] much more bleeding and swelling." Id. at 186. The cut to Burris's nose required six stitches to close and it was determined that it would take nearly five weeks for the bruising to dissipate. Id. at 187. Dr. O'Brien opined that the injuries inflicted on Burris caused a substantial risk of death to Burris. Id. at 185, 187-88.

In our view, this was ample evidence that enabled the jury to make a finding that Burris's injuries created a substantial risk of death. As a result, we conclude that the trial

22

court properly denied Patton's motions for a directed verdict and that the evidence was sufficient to support the convictions.

### V. Double Jeopardy Concerns

Finally, Patton argues that convictions for both confinement and aggravated battery cannot stand. In particular, Patton asserts that there was a reasonable possibility that the jury used the same facts to convict Patton of both offenses in violation of the "actual evidence test" of Article 1, Section 14 of the Indiana Constitution, Indiana's double jeopardy provision. Appellant's Br. p. 29.

In resolving this issue, we initially observe that Article 1, Section 14 of the Indiana Constitution provides that "No person shall be put in jeopardy twice for the same offense." This provision was intended to prohibit, among other things, multiple punishments for the same actions. Richardson v. State, 717 N.E.2d 32 (Ind. 1999). In Richardson, our Supreme Court established a two-part test for analyzing double jeopardy claims. Under that test, multiple offenses are the same offense in violation of the Indiana Constitution "if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." Id. at 49.

At issue in this case is application of the actual evidence test. Multiple offenses may violate double jeopardy principles "if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts." Id. In determining the facts used by the fact-finder to establish the elements of each offense, it

23

is appropriate to consider the charging information, jury instructions, and arguments of counsel. Borum v. State, 951 N.E.2d 619, 625 (Ind. Ct. App. 2011).

In this case, Patton was charged with confinement for "knowingly or intentionally confin[ing] . . . Burris without [her] consent, resulting in serious bodily injury, to-wit: unconsciousness to April Burris." Appellant's App. p. 22. The aggravated battery charge alleged that Patton knowingly or intentionally inflicted injury on Burris "that created a substantial risk of death or caused protracted loss or impairment of a bodily member or organ." Id. at 23.

The evidence showed that Patton initially struck Burris in the front yard and then moved her upstairs to the apartment. Burris told Officer Rogers that Patton would not allow her to leave the apartment, and Burris testified at trial that she fled the apartment without any clothes on because she knew that Patton would not let her leave the apartment. Tr. p. 75-76,126. This evidence showed that Patton's confinement of Burris was greater than what was necessary to accomplish the offense of aggravated battery.

In other words, even if the battery itself caused the initial confinement while Patton was hitting Burris, the confinement continued after the battery was over. The battery had concluded by the time that Patton had ordered Burris to take a shower. The fact that Burris fled from the back door without any clothes on after the battery was over and as soon as Patton left the bathroom supports the inference that the confinement was greater than necessary to commit the battery itself. Separate convictions under double jeopardy challenges have been upheld where the confinement was greater than necessary

24

to accomplish the underlying offense. See Mendenhall v. State, 963 N.E.2d 553, 571 (Ind. Ct. App. 2012) (upholding confinement and attempted murder convictions), trans. denied; Hopkins v. State, 759 N.E.2d 633, 639 (Ind. 2001) (observing that where the confinement of a victim is greater than that which is inherently necessary to rob him, the confinement, while part of the robbery, is also a separate criminal transgression).

Although it is not entirely clear, Patton may also be arguing that the same bodily injury for the aggravated battery conviction was used to enhance the confinement conviction to a class C felony. While the general rule is that two crimes may not be enhanced by the same bodily injury, see Bunch v. State, 937 N.E.2d 839, 847 (Ind. Ct. App. 2010), trans. denied, that was not the case here. Patton's attack on Burris was prolonged and involved multiple acts of violence against her. The State charged the aggravated battery offense under the substantial risk of death portion of the statute, and Burris's facial fractures supported the jury's finding as to that offense.

The State charged the confinement offense as a class C felony for Burris's resulting unconsciousness, an injury different from her facial fractures. The State specifically encouraged the jury in closing argument to find that Patton confined Burris and that the confinement resulted in unconsciousness to Burris. Tr. p. 318-19.

That said, the prohibition against double jeopardy will not be implicated where multiple injuries inflicted on the victim do not stem from a single act. Jackson v. State, 625 N.E.2d 1219, 1221 (Ind. 1993). Patton committed multiple acts of violence against Burris, and the many resulting injures supported the separate convictions. As a result,

25

Patton's convictions for both aggravated battery and class C felony confinement do not violate double jeopardy principles. Thus, Patton's claim fails.

The judgment of the trial court is affirmed.

ROBB, C.J., and BRADFORD, J., concur.